## QUAILE v. McARDLE.

### No. 12321.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 5, 1951.

Rehearing Denied Jan. 9, 1952.

Hyde, Barber & Shireman, Corpus Christi, for appellant.

Keys & Holt, and Louis W. Russell, all of Corpus Christi, for appellee.

NORVELL, Justice.

This suit was brought by the appellant, Fred Quaile, doing business as Fred Quaile Realty Company, seeking to recover a real estate dealer's commission from T. E. McArdle, the appellee. The controlling question is whether or not the offer to purchase secured by Quaile from a prospective purchaser, L. C. Andrews, Trustee, was in compliance with the terms of the listing contract executed by McArdle and delivered by him to Quaile. Certain issues were answered by the jury, but thereafter the trial judge rendered judgment notwithstanding such findings, upon the theory that the undisputed evidence (most of it being documentary in form) disclosed that Quaile was not entitled to recover.

We think the record presents a question of law. The listing contract was in writing, as was the offer made by the prospective purchaser, L. C. Andrews, Trustee, who apparently was acting on behalf of or in conjunction with Edgar Link-

enhoger in attempting to buy the property. The oral testimony received raises no conflict upon a controlling fact issue.

The listing contract was filled out on a printed form designated as the "Corpus Christi Real Estate Board Standard Form," and, as is often the case when forms are used, many of the blank spaces contained therein were not filled out. The property was described as being "situated in the County of Nueces, State of Texas, to-wit:

"16 Unit Apartment, Cornor of Second St., and Morgan Ave., Texas ———, Income ———, Utilities ———".

It was stipulated that the purchase price was as follows: "Owner is to receive net exclusive of commission, less existing indebtedness ——— Nine*th* Five Thousand and no/100 ($95,000.00) Dollars, payable ——— ($———) Dollars in cash and the balance payable as follows:'"

The provision of the contract relating to the real estate dealer's commission, insofar as pertinent here, provided that it should be "the amount received over the net listed price." Said agreement was dated May 16, 1950, and recited that it was "for a term of 30 days." However, it contained also the following notation: "Dated May 16, 1950, Expires June 16, 1950."

The offer to buy was placed in the form of a contract of sale to be executed by McArdle as seller and which was in fact signed by L. C. Andrews, Trustee, as purchaser. The property was described as "Being an apartment building located at the Northwest corner of Second Street and Morgan, and further described as Lots 9 & 10, Block 7, Bay View Addition to Corpus Christi, Nueces County, Texas, with all improvements thereon *and all furnishings therein,* Inventory Furniture to be attached hereto."

The clause relating to the consideration was as follows: "The consideration for this transaction is as follows: $98,500.00 Ninety Eight Thousand and Five Hundred Dollars cash, of which said sum paid as earnest money ($10,000.00 provided for in a foregoing paragraph) shall form a part, and the further consideration as follows: *This offer is subject to purchaser obtaining loan*

*in the amount of $60,000.00 on the above property."* (Italics supplied.)

H. J. Closterman, a real estate salesman employed by the appellant, testified that after the offer to purchase, signed by L. C. Andrews, Trustee, had been secured, he talked with McArdle over the telephone, about four o'clock on the afternoon of June 15th. Closterman quoted McArdle as saying, "I'm not signing the contract because it isn't in my estimation a binding contract because the contract reads, 'This offer is subject to purchaser obtaining loan in the amount of $60,000 on the above property.'" Closterman testified that he told McArdle that a verbal commitment had been made, whereupon McArdle said, "It doesn't make any difference. It isn't in writing and unless I would have it in writing I wouldn't consider it binding."

Closterman then obtained a letter from the Swantner Investment Corporation addressed to Edgar Linkenhoger containing a commitment to make a loan on the McArdle apartments. The loan was to extend over a period of fifteen years, bear 4½% interest per annum and be amortized on a monthly payment plan.

Closterman testified that he told McArdle that he had the written commitment and McArdle said that he would see Fred Quaile in the morning, the 16th.

Quaile testified that he called McArdle over the telephone the morning of the 16th and that McArdle said, "Your listing time has expired and you didn't comply with the contract during the period of your listing and I'm not going to sign the contract." According to Quaile, a "few words" followed and that was about all that was said.

McArdle's version of this conversation was as follows: "About 10:30 or 11:00 o'clock in the morning Fred (Quaile) called me up and tried to—he told me that they were all set and ready to go ahead with the deal. I told him, I said, 'Fred, you still haven't arranged cash, and I don't believe that you have conformed to the contract. My deal is a cash deal. You say Linkenhoger or Andrews or whoever it is, they arranged with Swantner to get a loan.

That still isn't binding on them. Now, if you will turn around and put the cash up in the bank to be paid to me when I deliver my papers to you then you have made a deal.' Fred said, 'Tom, I have agreed to get the cash and put it in the bank,' I said, 'Fine, Fred, nothing else I can do. It is satisfactory.' So we went then from one word to another and I got a little hot, and he was hot, so we dropped it."

McArdle's testimony as to the conversation of June 16th may be entirely disregarded for the written listing contains an offer to sell for cash, and there is no showing that L. C. Andrews, Trustee, submitted an amended offer to purchase in which the condition as to the $60,000 loan was eliminated. In other words, it was not shown that the proposed purchaser ever made an unqualified cash offer. Courts can not make contracts for parties and the trial court could not say, nor can this Court say, upon the record before us, that Andrews would have accepted the loan offered by Swantner Investment Corporation and paid over the proceeds to McArdle as part of the consideration. The listing called for a cash offer and none was received. Proffered testimony (excluded by the court) from Quaile that he could have obtained an unqualified offer from Andrews on June 16th, was obviously speculative and could not be relied upon to establish the offer required by the listing.

One other discrepancy between the listing contract and the offer to purchase should be mentioned. We have hereinabove set out the descriptions of the property contained in the listing agreement and in the offer to buy. One description contains merely a reference to a 16 Unit Apartment on the corner of Second St. and Morgan Ave. The other, in addition to the building, refers to *all furnishings therein*.

We know that Andrews intended to buy the apartments furnished, but did McArdle intend to sell the furniture? The description in the listing does not show that he did, and while the variance between the respective descriptions was apparently never mentioned in any of the testimony the failure of the offer of purchase to meet the terms of the listing agreement was urged upon motion for instructed verdict and again upon motion for judgment non obstante veredicto. It is well settled that the offer to purchase must meet the terms of the listing agreement. Even a slight variance will be fatal. 8 Am.Jur. 1092, Brokers, § 176. A proposition to buy which does not meet the terms of an offer to sell must be construed as a counter offer, and until this in turn is accepted there is no binding enforcible agreement. Evants v. Fuqua, 102 Tex. 430, 118 S.W. 132.

In our opinion the issue of waiver is not raised by the evidence. The date of termination of the listing contract is admittedly ambiguous and if it be considered that McArdle was incorrect in his contention that the contract was no longer in existence on June 16, 1950, he did not thereby waive the requirement that the offer to purchase be in accordance with the listing agreement.

The trial court correctly rendered judgment for appellee as a matter of law and the following authorities support such action: Colvin v. Blanchard, 101 Tex. 231, 106 S.W. 323; Gough v. Coffin, 55 Tex.Civ.App. 550, 120 S.W. 210; Peeples v. Griffith, Tex. Civ.App., 214 S.W. 561; Stark v. Ball, Tex.Civ.App., 190 S.W.2d 169; 7 Tex.Jur. 471, Brokers, § 75.

All of appellant's points have been considered; none discloses a reversible error and the judgment appealed from is accordingly affirmed.