Marvin L. RICHARDSON, Appellant,

v.

Joe F. ROWLAND et al., Appellees.

No. 15579.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 21, 1955.

Rehearing Denied Feb. 18, 1955.

Mays & Mays and Dave Miller, Fort Worth, for appellant.

H. Langdon Reaves, Fort Worth, for appellees.

MASSEY, Chief Justice.

Defendant Marvin L. Richardson was the owner of a parcel of land upon which he desired to erect an additional building. He needed a loan in finance of such new construction. Plaintiffs Joe F. Rowland and Frank Wood, d/b/a Rowland & Wood Company, were in the loan brokerage business. They secured the signature of the defendant to a contract in which he bound himself to pay them a commission of $1,000, conditioned upon their securing for him a ten-year term loan of $20,000, repayable in (equal) monthly installments, plus interest. Plaintiffs procured from an insurance company a "commitment" to the effect that it would make such a loan to the defendant, subject to certain conditions to be performed by defendant, and subject to certain contingencies. The defendant never did consent to contract with the insurance company and neither did he agree that the conditions and contingencies prescribed were satisfactory to him. The plaintiffs sued defendant on contract, alleging performance on their part and seeking enforcement of a provision that defendant should pay plaintiffs their commission in the event they procured an agreement from a lending agency that it would make the desired loan to him. Judgment non obstante veredicto was entered for plaintiffs and defendant appealed.

Judgment reversed and rendered.

Defendant's property was already mortgaged, and he desired to borrow sufficient money to pay off the current mortgage on it and the improvements located thereon and to provide him as well with additional funds for the construction of the new building. He had plans and specifications drawn for such building, anticipated cost of which was approximately $10,000. He needed a like amount to pay off the existing mortgage. Therefore he concluded that he would attempt to borrow the sum of $20,000, mortgaging his entire premises for such amount, including the structure he desired to build.

Pursuant to his desires he contacted the firm of the plaintiffs and enlisted their services in arranging such a loan. This took place about the month of May, 1953. The plaintiffs were unable to locate a lending agency willing to make the loan the defendant wanted, upon the terms he proposed and on the security he offered. The defendant's plan was temporarily dropped. Later on, about date of July 24, 1953, the plaintiffs approached the defendant with the proposition that if he would agree to pay them a $1,000 commission fee they believed that they could get a lending agency to loan him the $20,000 on the basis of his proposition. Of course, both parties were aware that the loan was sought for the purpose of constructing the defendant's new building. The defendant agreed to pay the plaintiffs on such a basis, whereupon the plaintiffs prepared and presented to the defendant, and defendant signed, the following contract:

"Loan Contract

"Rowland & Wood Co.
"Fort Worth, Texas

"I hereby agree to make through you, either in your name or that of anyone whom

you may may represent, a loan of $20,000.00 Twenty Thousand & no/100......Dollars, for a term of Ten (10) years, principal payable Monthly to bear interest at the rate of 6% per cent, per annum, payable monthly, to be secured by a first mortgage on real estate hereinafter described, principal and interest to be payable at such place and in such manner as the lender may direct. The real estate upon which I desire this first mortgage loan is as follows, to-wit: (here defendant's land was described) in addition to the interest above agreed upon, I agree to pay you as commission for negotiating the loan the sum of $1,000.00.

\*   \*   \*   \*   \*   \*

"I further agree to pay all expenses for Abstract of Title to the property offered as security in my application; also the fee for recording the mortgage and each and every instrument necessary to clear the title of all incumbrances and perfect said title in me, and an attorney's fee for examination of the title.

"I hereby agree to pay such actual expenses as you have incurred in the negotiation of the loan and examination of the property and title, if I do not obtain said loan, by reason of defects in the title or by reason of my being unable to remove all incumbrances from said property, and if you or anyone whom you may designate shall notify me of your acceptance of said loan and I am unable or refuse to complete said loan, then I agree to pay the above commission and all expenses you or the assignee of this contract may have incurred, for such refusal or inability to complete said loan.

\*   \*   \*   \*   \*   \*

"It is agreed that this agency to procure said loan shall be irrevocable for sixty days after I shall have furnished you complete and satisfactory abstract of title, showing perfect title in applicant.

"As security for the payment of any and all sums or sum of money to which you may be entitled, under this contract, I hereby pledge and mortgage to you the above described real estate.

"In Witness Whereof, I have hereunto set my hand this 24th day of July, A.D. 1953.

/s/ "Marvin L. Richardson"

By a letter dated four days later, on July 28, 1953, the Texas Prudential Insurance Company of Galveston, Texas, through its attorneys, offered to make the defendant a $20,000 loan at 6% interest, repayable in monthly installments over a period of 10 years. This offer referred to and related to an application for a loan made on date of May 27, 1953, to this same Company by the defendant, through an arrangement made by the plaintiffs. There seems to be no dispute but what the writing of the letter of the Company's attorneys, dated July 28, 1953, was brought about through the efforts of the plaintiffs sebsequent to the defendant's action in executing the contract dated July 24th.

It is worthy of note, however, that in addition to any promises or representations on the part of the defendant (as contained in his contract of July 24th, or as contained in his earlier application to the Company on May 27th) concerning what he agreed to do if the Texas Prudential Insurance Company would make him the loan he requested, the letter of the Company's attorneys made wholly new and different requirements of the defendant. For instance, the Company's offer to make the loan was conditional and subject to contingent occurrences precedent. It provided that the defendant should first cause a building to be erected upon the premises he offered as' security, provided that he should make an oath that at least $10,620 was expended upon such construction, provided that the Company (after the building was completed) must first be furnished with an appraisal by two disinterested appraisers showing that defendant's land and improvements were worth at least $66,120, provided that defendant should furnish the Company a Mortgagee's Title Policy in the sum of $20,000, provided that defendant should make a note secured by both a mortgage and deed of trust, provided that defendant should make a rental assignment, provided

that defendant should contract not to collect any rents due him more than two months in advance of their accrual, provided that defendant should agree that he would make tax payments direct to the Company in advance of the date due for their payment to the state, city and county, etc. In other words, the lending agency did not accept the defendant's offer, but instead made a proposition by way of a counter-offer or proposal to the defendant to make him a loan conditioned not upon what the defendant had proposed that he should do or refrain from doing, but also conditioned upon and contingent upon the defendant's doing or causing to be done certain things, all precedent to any obligation on the part of the lending agency to deliver over the $20,000.

■ Of course, had the defendant agreed and contracted to accept the counter-proposition of such lending agency as a contract in the place and stead of the contract which would have resulted had the Company made an acceptance of his own offer (as proposed in his contract with plaintiffs under date of July 24th), then he would have been considered as a person who has accepted such lending agency as a satisfactory party with whom he would contract and as having accepted its terms, —just as does a seller of real estate accept a buyer who has signed a contract to purchase his property as a person "ready, willing and able to buy" when he signs a contract after the person agreeing to make the purchase has signed it, or after such person inserts qualifying terms and provisions in it, whether such person is actually able, willing and ready or not in fact; and whether or not the new terms are actually agreeable, and the defendant would owe the plaintiffs (who procured the execution of such contract) their $1,000 commission, whether the loan was ever consummated or not,—just as the real estate seller would owe the real estate commission to a commission agent employed by him on a similar basis whether the sale was ever consummated or not. Stevens v. Karr, 1930, 119 Tex. 479, 33 S.W.2d 725, affirming, Tex.Civ.App., 297 S.W. 287; 7 Tex.

Jur., "Brokers", p. 459, sec. 65, and cases cited under notes in Tex.Jur. Ten-Year Supplement. On the modes whereby a broker may earn his commission, see Stevens v. Karr, supra, and 7 Tex.Jur., p. 443, sec. 54. In subsequent sections of such volume of Texas Jurisprudence, see the detailed analysis of the three instances in which a broker may (absent special contract) be entitled to his commission. Though the text relates to the more common sales contracts, we believe that with only minor qualification it could as well relate to the character of contract here under consideration. The same thing could properly be said if there were new terms proposed by the purchaser as a counter-proposition, if they were accepted by the seller.

■ Since the loan was never consummated, the resulting question is whether the defendant ever actually accepted the Texas Prudential Insurance Company's offer, as plaintiffs contend he did. The defendant never signed any contract formally making an acceptance. He never had any communication whatever with the Company. He did have correspondence with the plaintiffs. By such correspondence the plaintiffs persistently requested that the defendant let them know whether he accepted the Company's offer or whether he rejected it. The defendant never affirmatively did either. His letters set out that he had taken the Company's offer to certain banks and to certain lumberyards to see whether on the strength thereof he could get money, materials and supplies with which to build his building, but that he could not get such banks, etc., to do anything. Since he never did accept the Company's offer, the Company withdrew it after a few months had passed. The plaintiffs never sought to locate any other lending agency for defendant. Apparently the defendant never did furnish the plaintiffs with an abstract of title, and never contended that it was at an end as a contract, but plaintiffs treated it as having been breached by the defendant.

■■ Plaintiffs alleged performance of their part of the contract in their petition.

Suit was for commission and other items unnecessary to discuss in view of our disposition. The defendant answered denying the contract as alleged by the plaintiffs, denying performance by plaintiffs, and denying liability under the contract even construed as alleged by the plaintiffs. Defendant affirmatively alleged that the true contract between the parties was in fact part written and part oral, and that plaintiffs' contractual obligations included agreement on their part to procure for him a loan of money or funds, by the use of which on his part he could commence building and installing improvements on his property. If in fact the defendant's pleading actually should not be so construed to include all of what we have said, any question thereupon would actually be immaterial in view of the provisions of Texas Rules of Civil Procedure, rule 274, because there was no objection to any evidence bearing upon the issue submitted to the jury, and there was no objection by plaintiffs to the submission of that issue to the jury prior to its having been so submitted. Such issue should therefore be considered as having been plead by the defendant, he having assumed the burden upon said issue. The issue was submitted to the jury as follows, to-wit: "Do you find from a preponderance of the evidence that as a part of the contract between plaintiffs and defendant, it was agreed between them that plaintiffs were to procure a loan which would provide funds for the immediate commencement and completion of the contemplated improvements?" In answer, the jury found in the affirmative, or "Yes", thus finding for the defendant on the only issue submitted.

The foregoing having been the only issue submitted to the jury, it is apparent that as of the time of submission the trial court was of the opinion that the plaintiffs were entitled to a judgment unless the defendant could avoid liability through obtaining an affirmative answer to the single special issue. The defendant did obtain an affirmative answer. The issue submitted what the defendant thought was his affirmative defense and it was satisfactory to him, and the plaintiffs did not complain of it at the time. The issue and the answer given thereto must be given effect if it is possible to do so under the rules of law, for otherwise the defendant would be deprived of the affirmative defense which he undoubtedly thought was given him by the issue submitted. Hancock v. Sammons, Tex.Civ.App. Fort Worth, 1954, 267 S.W. 2d 252, writ refused, n. r. e.

Following the return of the verdict, the defendant filed a motion for judgment and the plaintiffs filed a motion for judgment non obstante veredicto. There was a compliance in all necessary respects with the provisions of T.R.C.P. 301. Upon a hearing, the trial court overruled the defendant's motion and granted the motion of the plaintiffs. Judment non obstante veredicto was entered in behalf of the plaintiffs, part of its language reciting that the trial court "being of the opinion that the evidence raised no issue of fact, that a directed verdict for plaintiffs would have been proper * * *", was entering judgment against the defendant.

We examine the statement of facts in order to ascertain whether there was evidence which supported the issue, and also whether proof by way of such evidence as might be found actually legally formed the ground of legal defense the defendant thought it would if he could obtain an affirmative jury finding. We follow this procedure because appellant predicates his appeal on the single premise that the trial court should not have disregarded the jury's answer to the issue, but should have entered a judgment for the defendant because thereof and based thereupon.

■ From an observation of the written instruments signed as a contract, or part of a contract, by the defendant on July 24th, and from an examination of the application which was signed by him on May 27th, it is noted that only by resort to parol evidence could plaintiffs have shown that the defendant ever agreed to borrow money for any particular purpose. Of course, it is undisputed that he wanted to borrow money to build a building on his

land, but nowhere in either instrument does the defendant offer to contract in this regard. It was also only by resort to parol evidence that plaintiffs could have shown that the defendant did actually agree to accept anything other than cash money, or its equivalent, laid in the defendant's hands. Absent the admission of parol evidence to qualify or explain the express written terms of the instruments signed by the defendant, a cash loan, or the equivalent thereof, was the only kind of loan he bound himself to accept. So, actually, the door was necessarily thrown open for both plaintiffs and defendant to introduce parol testimony in order to show what the complete contract was. Only through such having been done could plaintiffs have made out a prima facie case. The trial court did not submit any special issue to the jury with the burden thereupon placed on the plaintiffs, and the defendant makes no complaint because of his failure to do so. Only the defendant's defensive issue was submitted. The effect thereof, in so far as we must concern ourselves upon this appeal, is that defendant must as a matter of law be considered to have been either in position of having accepted the counter-proposition of the Insurance Company as a satisfactory contract, or in position of an offerer whose offer has been accepted,—unless he has affirmatively established that he actually did not accept the counter-proposition of the Insurance Company because it did not provide nor enable him to secure funds which enabled him to initiate and go forward with his plans to build, or unless he has affirmatively established that the counter-proposition of the Insurance Company should not be considered an acceptance of his offer for a like reason.

The evidence established beyond doubt that upon receipt of the counter-offer of the Insurance Company, both the plaintiffs and the defendant tried to obtain interim-financing,—i. e., some bank or lumberyard which would advance the defendant funds for materials and labor, etc., to initiate and carry forward construction of his building. They failed in their attempts to obtain such.

By this and other evidence from both the defendant and the plaintiffs was proven the fact that the labors of the plaintiffs in prevailing upon the Texas Prudential Insurance Company to make the counter-proposition to the defendant availed nothing, at least in so far as defendant was concerned. Even with the counter-proposition made, defendant was still not afforded any benefits of position, even though he thought he was benefited until disillusioned upon being unable to obtain interim-financing. He was not by any use of the Company's "commitment" enabled to even begin to construct the building he wanted.

All of such evidence is evidence of probative force and value directed toward showing that no such contract as is claimed by the plaintiffs to have been made was actually made, and that there was no acceptance on the part of the defendant of the counter-proposition of the Insurance Company as a contract satisfactory to him. 10 Tex.Jur., p. 529, sec. 306. Furthermore, all such evidence in so far as it supports the defendant's theory, and tends to show that the contract actually made included the provision inquired about in the special issue, would be evidence consistent with the terms of the written part of the contract. 17 Tex.Jur., p. 802, sec. 358. And since under the plaintiffs' own evidence it appeared that the written contract was only a part of the whole and that obligations of the defendant, implied by the written part, of necessity must be explained or made complete in order for the plaintiffs to show that the defendant agreed to be liable even though a loan other than in cash or its equivalent was secured for him,—the defendant is entitled to introduce testimony likewise—in explaining or making complete the contract according to his contentions. Though such testimony contradicted the evidence of plaintiffs, so long as it is not inconsistent with the contract's written provisions, it would be properly received. 17 Tex.Jur., p. 817, sec. 366. Disregarding any question of inconsistency therewith as to plaintiffs' parol evidence, there is no inconsistency in that of the defendant.

There was considerable evidence establishing that it was the custom in this character of transaction for the lending agencies to make "commitments" to the effect that they would loan so much money upon property once the property was built and in existence, setting up terms and conditions, etc., and the defendant was shown to have been familiar with such business usage. It was further shown that he expected to get the commitment of a lending agency, which, through its exhibition to a bank or other interim-financing agency, would enable him to secure such short-term financing as was requisite to his anticipated construction, after completion of which he would receive the loan from the lending agency, pay off all obligations and debts incurred through the interim-financing, ultimately leaving himself in the relationship of a mortgagor, with his mortgagee the lending agency which made the commitment enabling him to· accomplish his purpose. To our view the evidence established the custom and also, pursuant to the custom, the way and manner whereby a broker earned his commission for aiding a person to bring all this about. However, we do not see where it was ever established in the evidence that the terms and provisions of the "commitment" offered to the defendant by the Texas Prudential Insurance Company was usual and customary. Indeed, no usual and customary provisions of such a commitment were shown at all. The plaintiffs' own expert interim-financier witness testified that there are "commitments" which incorporate terms and conditions which are acceptable to· interim-financing agencies and on the strength of which such agencies readily advance money, —while there are contrarily "commitments" containing terms and provisions so restrictive or so conditioned or so unreasonable in the view of interim-financing agencies that they are considered valueless as security upon which the agency might be asked to advance money. He admitted that in so far as the "commitment" of the Texas Prudential Insurance Company to the defendant was concerned, he would not advance a person with that kind of commitment any money as a loan unless that person was, independently of such commitment, worth the amount advanced.

■ From all the evidence, considered in light of the jury's verdict, it is apparent to us that the defendant received the "commitment" of the Insurance Company as a counter-proposal; that he did not make an acceptance of it by taking it and attempting to use it to obtain interim-financing, though it is apparent that he would have accepted it had he been able to obtain such; and that having done nothing with it and having never affirmatively accepted it as satisfactory, neither the presentation of it to him by the Insurance Company nor anything afterward done by him ever was operative to alter his legal position from that which obtained prior to the time of its receipt. Certainly, the Company's "commitment" was not an acceptance of any offer made by the defendant. Neither was it such an offer as the defendant was in duty bound to accept under the terms of his contract with the plaintiffs, or which operated to obligate him in any way to the plaintiffs.

■ We are therefore of the opinion that by·obtaining a favorable finding of the jury to the special issue submitted, the defendant established a complete defense to the suit of the plaintiffs, in that not only was the fact thereby established that no such contract, as the plaintiffs contend was made, was ever actually made by the defendant,—but furthermore established the fact that the agreed specific performance on the part of the plaintiffs was actually never performed by them. Since the provisions for any benefit to plaintiffs were contingent upon specific performance by them, they should not be entitled to recover.

■ There being no cross-assignments of error whereby the appellees in the cause (plaintiffs in the court below) advance reasons why this Court should not enter a judgment for the appellant in the event of a reversal by us upon a. conclusion that the judgment should have been entered for defendant rather than for plaintiffs, there

appears to be no reason why we should not reverse and render the judgment of the trial court. The error of the trial court does not affirmatively appear to have been an error which prevented appellees from bringing forward on appeal any assignment of any error, because of the occurrence of which they believed operated to their prejudice. They make no complaint directed thereto. Therefore, it appears that pursuant to the provisions of T.R.C.P. 434 the judgment in the cause should be reversed and rendered.

Reversed and rendered.