ASHFORD DEVELOPMENTS, INC., Appellant,

v.

USLIFE REAL ESTATE SERVICES CORPORATION and Carruth Mortgage Corporation, Appellee.

No. 05–82–00101–CV.

Court of Appeals of Texas, Dallas.

Jan. 20, 1983.

Rehearing Denied March 7, 1983.

Henry A. Popkin, Houston, for appellant.

Charles R. Haworth, Dallas, C. Henry Kollenberg, Houston, for appellee.

Before STEPHENS, WHITHAM and GUILLOT, JJ.

WHITHAM, Justice.

The appellant, Ashford Developments, Inc., acting through a mortgage broker, the appellee, Carruth Mortgage Corporation, applied to appellee, USLife Real Estate Service Corporation, for a standby first mortgage loan commitment to be issued through a USLife affiliate company. Contending that the loan commitment issued contained an improper requirement, Ashford refused to accept the commitment and brought this action against USLife and Carruth to recover the application fee. Carruth counterclaimed for a separate fee it claimed was due it from Ashford pursuant to a separate application agreement between Ashford and Carruth. The trial court rendered judgment against Ashford on its action against USLife and Carruth and rendered judgment in favor of Carruth on its counterclaim against Ashford. The principal issue involved in this appeal is whether it was proper for the loan commitment to contain a requirement that a designated street (Antoine) be 100% complete. We conclude that the lender was authorized to place the requirement in the loan commitment. Accordingly, we affirm.

Ashford sought to finance construction of an office building and warehouse development in Houston, Texas. Ashford's president testified that the project was to be "constructed to face on Mitchelldale and Antoine, if and when Antoine went through." With the loan application Ashford furnished Carruth and USLife the following map showing the location of the project ("site") in relation to the streets, roads, freeways and highways in the area.

pinemont

northwest freeway

antoine

mangum

hempstead highway

antoine
extension

w.34th

SITE

vantage co.
development

mitchelldale

IME
development

dacoma

longpoint

antoine

loop 610

The dashed line identified as "antoine extension" adjacent to and immediately to the east of the site is the street the lender required to be 100% complete. Ashford placed the dashed line on the form of map used before submitting the foregoing map to Carruth and USLife. At the time of the loan application the "antoine extension" right of way had been dedicated but no construction had been done on the street. At the time of the loan application none of the parties had any control over the construction of that part of Antoine Street in question. That construction was under the sole control of the City of Houston.

The loan application is described as a "Letter of Financing Intent" and is in the form of a letter from USLife to Ashford wherein USLife advises Ashford that it is "prepared to present the following proposal to one or more of our life insurance company affiliates for their consideration." Below USLife's signature on the letter, Ashford executed the instrument indicating that the proposal was "accepted and agreed to." The controversy centers on the first sentence in the following paragraph contained in the loan application:

Should one or more of our life insurance company affiliates approve this transaction, a mortgage loan commitment will be issued *on the form attached hereto* which will incorporate the terms specified above and *to which supplemental provisions may be added as deemed reasonably necessary by their counsel to conform to the particular requirements of this transaction.* Upon such issuance of the commitment and acceptance thereof by you, the Application Fee will be applied and fully credited toward the Commitment Fee specified above. [Emphasis added.]

The loan commitment tendered Ashford by a USLife affiliate contained sixteen typed paragraphs that did not appear on a blank copy of a printed form of a mortgage loan commitment attached to the loan application. The principal issue in this appeal involves one of those sixteen typed paragraphs which appears as paragraph 46 of the tendered loan commitment and reads as follows:

46. STREET COMPLETION: Evidence satisfactory to us shall be submitted prior to closing which shall reflect 100% completion of Antoine Street and the payment in full of any paving lien imposed in connection with any improvement required herein.

The blank copy of the printed form of a mortgage loan commitment attached to the loan application as well as the subsequent loan commitment tendered Ashford by the USLife affiliate contained the following printed paragraph 23:

23. Access: All streets necessary for access to the Property Security must be dedicated and accepted for maintenance and public use by the appropriate governmental authorities and satisfactory evidence thereof must be submitted to us prior to closing.

USLife and Carruth argue that the lender had the right to include paragraph 46 in the loan commitment. Ashford argues that the lender had no such right. USLife and Carruth contend that under the terms of the loan application the lender could add such additional terms to the loan commitment as "deemed reasonably necessary by [Its] counsel" and that the evidence established that the lender's counsel deemed paragraph 46 of the loan commitment "reasonably necessary." Ashford contends that while the loan application afforded the lender "the right to enumerate details with respect to *the terms set forth in the contract;* it did not, however, bestow upon [the lender] a free reign to attach new conditions to or alter the substance of the terms of the contract, no matter how reasonable they might in hindsight appear, merely because counsel deemed them reasonably necessary." [Emphasis in Ashford's brief.]

■ In the present case the parties agree that the loan application constitutes a valid contract. Moreover, Ashford agrees that the lender had the right to add provisions to the loan commitment that "enumerate details with respect to the terms set forth in the [loan application]." Thus, we are not confronted with the argument that

the loan agreement is unenforceable as an agreement to make a contract in the future without specifying the terms and details of the proposed contract. *Scott v. Ingle Bros. Pacific, Inc.,* 489 S.W.2d 554, 555–56 (Tex. 1972); *Stekoll Petroleum Co. v. Hamilton,* 152 Tex. 182, 255 S.W.2d 187, 192 (Tex. 1953); *Radford v. McNeny,* 129 Tex. 568, 104 S.W.2d 472, 474 (1937). Accordingly, we treat the present case as governed by the rule recognized by the Supreme Court in *Scott.* "But parties may agree upon some of the terms of a contract, and understand them to be an agreement, and yet leave other portions of an agreement to be made later." *Scott* at 555. But in the present case those "other portions of [the] agreement to be made later" must be made in conformity to "the particular requirements of the transaction." We hold that the terms of a contract cannot be unilaterally remade by one of the parties. *Kitten v. Vaughn,* 397 S.W.2d 530, 533 (Tex.Civ. App.—Austin 1965, no writ). *See also Commercial Credit Corporation v. Bryant,* 490 S.W.2d 644, 647 (Tex.Civ.App.—Amarillo 1973, no writ). Therefore, we disagree with USLife and Carruth that the lender could add such additional terms to the loan commitment "as deemed reasonably necessary by [Its] counsel." We agree with Ashford that the loan application does not "bestow upon [the lender] a free reign to attach new conditions to or alter the substance of the terms of the contract, no matter how reasonable they might in hindsight appear, merely because counsel deemed them reasonably necessary."

■ In the present case, however, the loan application provides a method by which additions of some character may be made in the loan commitment by the lender subsequent to execution by the parties of the loan application. Therefore, the lender has the contractual right to make "additions." The question presented here is whether the lender has exceeded his contractual right to add provisions to the loan commitment. We conclude that the lender did not. The loan application imposes limitations on the lender. In addition to being "deemed reasonably necessary" by lender's counsel, terms added must be "supplemental" to something contained in the loan application and must "conform to the particular requirements of [the] transaction." We decline, however, the temptation to interpret for the ages the meaning of the loan application. Instead, we look to Ashford's own interpretation of the loan application. Ashford agrees that the loan application afforded the lender "the right to enumerate details with respect to the terms set forth in the contract [loan application]." We conclude that under Ashford's own interpretation of the loan application the lender could add paragraph 46 to the loan commitment. The parties understood Antoine Street to be a street "necessary for access to the Property Security." Ashford represented as much to Carruth and USLife when it submitted the above map with the loan application. Ashford confirmed as much when its president testified that the project was to be "constructed to face on Mitchelldale and Antoine, if and when Antoine went through." The loan application by attachment of the form of mortgage loan commitment provided that "[All] streets necessary for access to the Property Security must be dedicated and accepted for maintenance and public use by the appropriate governmental authorities and satisfactory evidence thereof must be submitted to [lender] prior to closing." We conclude, therefore, that paragraph 46 of the loan commitment was, in Ashford's language, the enumeration of "details with respect to the terms set forth in the contract [loan application]." Accordingly, we hold that under the terms of the loan application the lender could add paragraph 46 to the loan commitment and that Ashford could not refuse to accept the loan commitment because of the addition of paragraph 46 to the loan commitment.

■ We find no merit in Ashford's point asserting error in the admission into evidence of certain documents. The documents were offered solely with respect to the issue of the reasonableness of USLife's conduct and not to prove the truth of the matters contained therein. The documents were admissible for that purpose. *McAfee*

*v. Travis Gas Corp.,* 137 Tex. 314, 153 S.W.2d 442 (1941). Moreover, in view of our disposition of the case, it is not necessary to address Ashford's point contending that the conduct of USLife constituted a deceptive trade practice under the Deceptive Trade Practices Act, Tex.Bus.Com.Code Ann. § 17.41 et seq. (Vernon Supp.1982).

Affirmed.

STEPHENS, Justice, dissenting.

The sole question is whether terms embodied in a final loan commitment are at variance with the terms of the loan application sufficient to deny the loan broker its right to a commission for procuring a loan for its principal, or the right of the prospective lender to retain an application fee paid in advance, upon the prospective borrower's refusal to accept the terms and conditions of the loan offered. The majority conclude that the conditions imposed by the prospective lender were in accordance with the loan application and thus are permissible. I disagree, and accordingly I dissent.

Ashford Developments, Inc. is engaged in the business of real estate development. On April 16, 1979, Ashford entered into an agreement with Carruth Mortgage Corporation, a loan broker, whereby Carruth would secure for Ashford a loan commitment of at least $1,000,000.00. The agreement specified certain conditions of the loan, including Ashford's agreement to pay Carruth a fee of 1% "... upon issuance of such a commitment, or a commitment for a loan at any other terms which we may also otherwise accept...."

A few days later, Carruth, who was also an underwriter for USLife Real Estate Services Corporation, in its dual capacity as agent for both Ashford and USLife, procured from USLife a form entitled "Letter of Financing Intent." This document, when completed, was the loan application which was submitted to various prospective lenders. The parties agree that the loan application was a valid and binding agreement, and neither party contends that it is ambiguous.

The loan application contained more detailed provisions than did the first agreement of April 16, 1979. It first requires that a certified or cashier's check in the amount of $11,000.00 payable to USLife Real Estate Service accompany the loan application. It then provides that the prospective borrowers':

acceptance of a commitment which differs in any way from the terms hereof shall automatically amend this agreement so as to conform to the commitment.

It further provides that should a willing lender be found, the permanent loan commitment:

will be issued on the form attached hereto which will incorporate the terms specified above and to which supplemental provisions may be added as deemed reasonably necessary by their counsel to conform to the particular requirements of this transaction. Upon such issuance of the commitment and acceptance thereof by you, the Application Fee will be applied and fully credited toward the Commitment Fee specified above.

The attached form referred to above contained a paragraph which read:

23. Access: All streets necessary to access to the Property Security must be dedicated and accepted for maintenance and public use by the appropriate governmental authority and satisfactory evidence thereof must be submitted to us prior to closing.

The loan commitment, in its final form, as submitted to Ashford for its approval, was for a period of twenty-four months after its issuance and it contained, in addition to paragraph 23, as set forth above, an additional paragraph numbered 46 which read:

46. STREET COMPLETION: Evidence satisfactory to us should be submitted prior to closing which shall reflect 100% completion of Antoine Street and the payment in full of any paving lien imposed in connection with any improvement required herein.

The majority concludes that the addition of paragraph 46 was permissible in light of

the provision permitting the lender's counsel to supplement the application provisions as they deem necessary. I strongly disagree with this conclusion, insofar as its effect is to bind the principal to the payment of Carruth's commission, or to permit US-Life to retain the $11,000.00 application fee. The loan, as offered by the lender contained substantially different terms from that sought and was found unacceptable by the borrower. The parties agree, and the majority recognizes that the street in question had been dedicated and its completion was solely within the control of the officials of the City of Houston. The loan commitment, being only for a term of two years, and containing the requirement that Antoine Street, the street in question, must be 100% complete before funding, left the borrower in an intolerable position. The City of Houston might or might not complete Antoine Street within two years, or they might never complete Antoine Street. Its time of completion, if ever, was not within the control of the borrower. I do not quarrel with the requirement of the lender that Antoine be completed, but such a requirement was a substantial variance with the requirement that all access streets must only be dedicated prior to funding, as was provided by paragraph 23 of the loan application.

The majority opinion states that the parties understood Antoine Street to be a street "necessary for access to the Property Security". I disagree with this statement. I find nothing in the evidence that forces the conclusion that the completion of Antoine Street was *necessary for access to the property*. The map set forth in the majority opinion shows that access was readily available to the site from Mitchelldale. I would agree that access might be easier when Antoine Street was complete, and its completion might make the property more valuable, yet its completion is far from being necessary for access. In fact this is the very crux of the dispute.

The loan offered Ashford, with its changed conditions, provided in paragraph 46, constituted a counter offer by the lender which required acceptance by Ashford before any commission would be due the broker. *Richardson v. Rowland,* 275 S.W.2d 184 (Tex.Civ.App.—Fort Worth 1955, writ ref'd n.r.e.). Furthermore, it has been held that an offer to sell realty, listed with a broker for sale, must meet the term of the listing agreement to entitle the broker to recover his commission, and even a slight variance from such terms is fatal to recovery. *Quaile v. McArdle,* 244 S.W.2d 695 (Tex.Civ.App.—San Antonio 1951, writ ref'd n.r.e.). Although *Quaile* concerned a real estate broker and this case concerns a loan broker, I fail to perceive any significant difference between the two.

Since the commitment issued did not conform to the agreement between the parties, and was not accepted by Ashford, the Application Fee should not have been applied to the lender's Commitment Fee.

I would reverse, denying Carruth's right to a commission, and granting Ashford recovery of its $11,000.00 application fee.