**ASHFORD DEVELOPMENT, INC., Petitioner,**

v.

**USLIFE REAL ESTATE SERVICES CORPORATION et al., Respondents.**

No. C-2039.

Supreme Court of Texas.

Dec. 7, 1983.

Rehearing Denied Jan. 18, 1984.

Susman & Kessler, Henry A. Popkin, Houston, for petitioner.

Johnson, Swanson & Barbee, Charles R. Haworth, Dallas, Schlanger, Cook, Cohn, Mills & Grossberg, C. Henry Killenberg, Houston, for respondents.

KILGARLIN, Justice.

This case involves a dispute over the construction of a loan commitment agreement between a developer, a loan broker, and an agent for a potential lender. Petitioner, Ashford Development, Inc., wanted to build an office/warehouse complex on a tract of land in the northwest part of the city of Houston, but it needed a loan commitment for interim financing before the project could be commenced. Ashford contacted a mortgage broker, Carruth Mortgage Corp., and agreed to pay Carruth 1% of the loan commitment if Carruth could find a lender of money. Carruth contacted the other respondent, USLife Real Estate Services, a holding company for several insurance companies. USLife required Ashford to fill out a letter of financing intent, listing the terms Ashford desired. USLife also re-

quired an application fee of $11,000, which was nonrefundable if USLife found a lender willing to loan on Ashford's terms. The letter of financing intent contained a provision which would permit the lender to add supplemental provisions as it deemed reasonably necessary to conform to the particular requirements of the transaction. Also, attached to the letter were form terms of the loan commitment. USLife found a lender for the amount requested by Ashford. However, the prospective lender sought to add a term to the loan commitment that required that Antoine, a street, which, when completed, would front on the proposed development, be 100% completed before the money would be loaned. Ashford treated this as a counter-proposal and declined to pursue the loan commitment. USLife claimed it had found a lender, who was merely supplementing the provisions of the letter of financing intent, as it was allowed, and retained the $11,000. Ashford refused to pay Carruth the brokerage fee. Accordingly, Ashford sued USLife and Carruth sued Ashford. Trial was to the court without a jury, and the judgment of the court was that Ashford take nothing against USLife and that Carruth recover from Ashford $11,000 for the brokerage fee and $6,000 as attorney's fees. The court of appeals affirmed. 649 S.W.2d 96. We reverse the judgments of the courts below and render judgment that Carruth take nothing from Ashford and Ashford recover its $11,000 application fee from USLife. We remand this cause to the district court for determination of the amount of the reasonable attorney's fees to which Ashford is entitled.

Two days after being contacted by Carruth for a standby first mortgage in the amount of $1,100,000 on Ashford's proposed Mitchelldale Road office/warehouse complex, USLife prepared the letter of financing intent, which was approved and accepted the same day by Ashford, which stated in part as follows:

Should one or more of our life insurance company affiliates approve this transaction, a mortgage loan commitment will be issued on the form attached hereto which will incorporate the terms specified above and to which supplemental provisions may be added as deemed reasonably necessary by their counsel to conform to the particular requirements of this transaction. Upon such issuance of the commitment and acceptance thereof by you, the Application Fee will be applied and fully credited toward the commitment fee specified above.

The attached form contained the following provision:

23. ACCESS: All streets necessary for access to the Property Security must be dedicated and accepted for maintenance and public use by the appropriate governmental authorities and satisfactory evidence thereof must be submitted to us prior to closing.

Based on Ashford's acceptance of the letter of financing intent, USLife obtained the agreement of Lincoln Liberty Life Insurance Company to act as lender. Lincoln Liberty prepared a commitment agreement, which provided in part as follows:

46. STREET COMPLETION: Evidence satisfactory to us shall be submitted prior to closing which shall reflect 100% completion of Antoine Street and the payment in full of any paving lien imposed in connection with any improvement required herein.

Shortly thereafter Ashford advised Carruth and USLife that Lincoln Liberty's commitment contained numerous terms additional to and/or in variance with the terms of the application for a mortgage commitment. Ashford said it was unwilling to proceed and requested a refund of the $11,000 prepaid commitment fee to USLife.

■ The major issue presented is whether paragraph 46 of the loan commitment constitutes a supplemental provision as authorized by the Letter of Financing Intent or constitutes a counter-offer. Paragraph

46 of the loan commitment would be considered a counter-offer and rejection of the letter of financing intent if it requires the performance of a condition which does not naturally flow from the terms of Ashford's proposal. *United Concrete Pipe Construction v. Spin-Line Co.,* 430 S.W.2d 360 (Tex. 1968); and *Martin Weiss Co. v. Schwartz,* 295 S.W. 197 (Tex.Civ.App.—Eastland 1929, no writ). We must, therefore, decide if Antoine was a street necessary for access to the office/warehouse complex. If it was, then Lincoln Liberty was entitled under paragraph 23 terms of the agreement to supplement the loan commitment by adding paragraph 46. If Antoine was not necessary for access to the property, then paragraph 46 constituted a counter-offer and Ashford would be entitled to a refund from USLife and would owe Carruth nothing.

The proposed complex was to be constructed so as to face on Mitchelldale Road, which at the time of the signing of the agreement was an existing paved street, and adjacent to the right-of-way of the yet to be constructed Antoine Street. Mitchelldale Road consisted of two extremely long blocks, bounded on either end by two major Houston thoroughfares, Hempstead Highway and the Northwest Freeway. The proposed complex was to be located approximately one-tenth of a mile from the Hempstead Highway entrance onto Mitchelldale.

Carruth and USLife contend that Ashford, by submitting a proposed site drawing on which Antoine was reflected by dotted lines, understood Antoine to be a street necessary for access. We place no such construction upon the site map. It indicates Antoine to be nothing more than it was, a street proposed for future construction by the city of Houston. The loan application, financing agreement, commitment request, and architectural drawings submitted in support thereof, all refer to the Mitchelldale Road office/warehouse complex. Further, an examination of the site map indicates that Antoine, even when and if completed, would afford no better or

closer access to Hempstead Highway than did Mitchelldale Road. Ashford's president, Michael Sternthal, testified that Mitchelldale afforded sufficient access to the project. USLife's representative, Homer Armstrong, admitted that in his opinion Mitchelldale Road afforded ingress and egress from the project, although he did say that the completion of Antoine would have made the project more profitable.

The proposed loan commitment was for a period of two years. The requirement of paragraph 46 was for 100% completion of Antoine Street and the payment in full of any paving lien. Inasmuch as the completion of Antoine Street was solely within the control of the city of Houston, which might or might not complete Antoine Street within two years, or ever, Ashford surely cannot be said to have contemplated Antoine as a street reasonably necessary for access at the time it applied for the loan commitment. We therefore conclude that paragraph 46 constituted a counter-proposal and Ashford was entitled to a return of its prepaid commitment fee and owed nothing to Carruth as a broker.

■ Next, Ashford complains that the court of appeals erred in affirming the trial court's granting of a summary judgment against Ashford on its claim for relief under the Deceptive Trade Practices Act. We disagree. An allegation of a mere breach of contract, without more, does not constitute a "false, misleading or deceptive act" in violation of the DTPA. *Dura-Wood Treating Co. v. Century Forest Industries, Inc.,* 675 F.2d 745 (5th Cir.1982); *Coleman v. Hughes Blanton, Inc.,* 599 S.W.2d 643 (Tex.Civ.App.—Texarkana 1980, no writ).

Next, Ashford raises as a point of error the admission into evidence of certain exhibits. Because of the disposition we make in this case, this point of error is now moot.

■ Finally, Ashford contends that the court of appeals erred in holding it had not given proper notice under art. 2226, Tex. Rev.Civ.Stat.Ann., so as to entitle Ashford

to attorney's fees. We agree. Article 2226 does not require that the presentment of the claim to the debtor be in any particular form or manner. All that is required is a request that payment of the claim be made and failure of the debtor to pay within thirty days thereafter. The purpose of the requirement of presentment is to enable the debtor to pay the claim within the thirty days and avoid liability for attorney's fees. *France v. American Indemnity Company,* 648 S.W.2d 283 (Tex.1983). Ashford sent a letter to Carruth requesting a refund of its $11,000 commitment fee. A carbon copy of this letter was sent to USLife. This was a sufficient presentment of the claim to meet the requirements of art. 2226.

Accordingly, we reverse the judgments of the courts below and render judgment that Ashford recover $11,000 from USLife; that Carruth take nothing from Ashford; and, remand to the trial court for determination of Ashford's attorney's fees.