JONES, Circuit Judge,
dissenting.
With due respect to my colleagues, I dissent from the affirmance of this $300,000 judgment for a house worth less $100,000 that the McCaigs never lived in, and for a debt on which they never had personal liability. Given the majority’s errors in interpreting the Texas Debt Collection Act (“TDCA”)[1], this kind of liability may become plausible nearly every time a lender makes a mistake concerning a consumer debt.[2] Another way to look at this result is that in Texas, there has been no cause of action for “attempted wrongful foreclosure.” Port City State Bank v. Leyco Constr., 561 S.W.2d 546, 547 (Tex.Civ.App.1977); Peterson v. Black, 980 S.W.2d 818, 823 (Tex.App.1998); Anderson v. Baxter, Schwartz & Shapiro LLP, 2012 WL 50622, at *4 (Tex.App.2012). Until today. I would reverse the judgment.
There is no doubt that “Wells Fargo’s repeated mistakes and institutional inability to identify and remedy its mistakes cast a deep pall of extended duration over the McCaig household.” On the other hand, these individuals were well educated, knew their rights, and ultimately received full contractual satisfaction. Wells Fargo wrote letters and threatened foreclosure, but it never foreclosed on the house. Significantly, contrary to the majority’s re *487 peated assertions, Wells Fargo never “waived” its right to foreclose. The original loan remained in default, but Wells Fargo agreed to forbear from exercising its remedies, including foreclosure, only so long as the McCaigs made payments consistent with the Forbearance Agreement. The majority’s apparent confusion between the lender’s contractual rights and its mismanagement of the loan has serious legal consequences.
To be clear, I dissent from Parts II, III.B, IV.B and IV.C-E of the majority opinion.[3] My disagreement centers on the applicability of the economic loss rule.
The economic loss rule “generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract.” Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 12 (Tex.2007).[4] Texas cases support applying that rule here, and our own district courts have extended this reasoning to the TDCA. There is no need for the majority’s sweeping, straw-man conclusions about how the TDCA coexists, or does not, with a party’s contract rights. Had the McCaigs failed to make their payments, nothing Wells Fargo did was inconsistent with the Forbearance Agreement. Wells Fargo, however, repeatedly mis-accounted for the McCaigs’ monthly payments and erroneously believed they were in default. Wells Fargo sent notices of breach and intent to foreclose, and then instigated, but fortunately did not consummate, formal foreclosure proceedings. That the McCaigs did not default means that Wells Fargo did not perform as it was supposed to under the contract. This is breach, no more.
Like the TDCA, the Texas Deceptive Trade Practices Act (“DTPA”) proscribes certain unconscionable or deceptive practices that create “independent legal duties,” yet the Texas Supreme Court has held, and this and lower courts have repeatedly affirmed, that mere breaches of contract cannot create DTPA liability. In Ashford, the. Court explained that a mere breach of contract is not a “false, misleading or deceptive act” pursuant to the DTPA. Ashford Dev., Inc. v. USLife Real Estate Servs., 661 S.W.2d 933, 935 (citing Dura-Wood Treating Co. v. Century Forest Indus., Inc., 675 F.2d 745 (5th Cir.1982); Coleman v. Hughes Blanton, Inc., 599 S.W.2d 643 (Tex.Civ.App.1980)). In Crawford, contrary to the majority’s interpretation, the Court did not “concludef ] there was no statutory violation to begin with.” Rather, the Court concluded that contractual violations are not statutory violations. That is, the Court interpreted the statute to exclude breach of contract claims. The alleged misrepresentation in Crawford was a promise to perform that was never fulfilled. Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 14 (Tex.1996). The Texas Supreme Court rejected this as a candidate for DTPA liability, since the opposite conclusion “would convert every breach of contract into a DTPA claim.” Id.[5]
*488 This court and a legion of Texas courts have correctly construed Crawford and Ashford to exclude mere breach of contract cases from DTPA liability. See, e.g., Dura-Wood, 675 F.2d at 756 (5th Cir.1982) (“an allegation of breach of contract — without more — does not constitute a false, misleading, or deceptive action such as would violate ... the DTPA”). See also, e.g., Greco v. Jones, 38 F.Supp.3d 790, 799 (N.D.Tex.2014); Allstar Nat’l Ins. Agency v. Johnson, No. 01-09-00322-CV, 2010 WL 2991058, at *6 (Tex.App. July 29, 2010); Bank One, Texas, N.A. v. Little, 978 S.W.2d 272, 281 (Tex.App.1998); Chilton Ins. Co. v. Pate & Pate Enters., Inc., 930 S.W.2d 877, 890 (Tex.App.1996); Kuehnhoefer v. Welch, 893 S.W.2d 689, 693 (Tex.App.1995).
Further, district courts in this circuit have applied this rule to TDCA claims. In Johnson, the plaintiff “assert[ed] that, by seeking .payments and charges or made [sic] payments out of escrow in amounts not authorized by the loan documents, Defendants misrepresented what Plaintiff owed under her loan documents — that is, her contract.” Johnson v. Wells Fargo Bank, N.A., No. 3:13-CV-1793-M-BN, 2014 WL 2593616, at *4 (N.D.Tex. June 9, 2014). The court in that case joined other district courts that had “applied the economic loss doctrine to TDCA claims premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender.” Id. See also McCartney v. Citi-Financial Auto Credit, Inc., No. 4:10-CV-424, 2010 WL 5834802, at *5 (E.D.Tex. Dec. 14, 2010) (“To the extent that Plaintiff may claim that Citi made a misrepresentation or false statement by attempting to collect the debt in violation of the agreement ..., the Court finds such an argument not to be actionable under the TDCA.”); Caldwell v. Flagstar Bank, FSB, No. 3:12-CV-1855-K-BD, 2013 WL 705110, at *12 (N.D.Tex. Feb. 4, 2013) (applying “the economic loss rule to TDCA claims premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender”). Cf. Singh v. JP Morgan Chase Bank, NA, No. 4:11-CV-607, 2012 WL 3904827, at *7 (E.D.Tex. July 31, 2012) (“if the defendant’s conduct would give rise to liability only because it breaches the parties’ agreement, the plaintiffs cause of action sounds only in contract”). The majority took no note of these cases duly cited by Wells Fargo.[6]
Applying the economic loss rule here, Wells Fargo should have been granted judgment as a matter of law on all four of the TDCA claims that the majority discuss. One of these is a claim for “misrepresenting the character, extent, or amount of a consumer debt[.]” § 392.304(a)(8). Consistent with Crawford and Ashford, the “misrepresentation” occasioned solely as a result of Wells Fargo’s breach of its contract with the McCaigs should not have been transformed into a statutory claim *489 for mental anguish damages. Two other claims are for the “unfair or unconscionable” practices of “attempting to collect ... a charge, fee, or expense incidental to the obligation unless ... expressly authorized by the agreement creating the obligation,” § 392.303(a)(2), and for the “fraudulent, deceptive or misleading” practice of “representing that a consumer debt may be increased by the addition of attorney’s fees, service fees, or other charges if a written contract or statute does not authorize” them. § 392.304(a)(12). These claims relate to the accruals of interest, penalties, and fees (erroneously) premised on the McCaigs’ default. But the parties’ agreement expressly authorized, in writing, the accrual of certain fees and charges during the pendency of the Forbearance Agreement, and these charges were all removed once the McCaigs had completed the makeup payments. Because the contracts, whether complied with or not, provided for these charges, no non-contractual statutory violation should be recognized.
Finally, for violating its contract, Wells Fargo was found guilty of “threats or coercion” consisting of threats to foreclose “without proper court proceedings,” § 392.301(a)(7), and “threatening to take an action prohibited by law.” § 392.301(a)(8). The majority’s reading of these provisions specifically equates mere contract breach with statutory violations, contrary to Crawford and Ashford.
Equally unjustifiable, the majority’s interpretation of these two provisions eviscerates the very next statutory provision, which was clearly intended to preserve a lender’s legal rights. § 392.301(b) states that “Subsection (a) does not prevent a debt collector from: ... (2) threatening to institute civil lawsuits or other judicial proceedings to collect a consumer debt; or (3) exercising or threatening to exercise a statutory or contractual right of [nonjudicial foreclosure].” That language is clear, and it is simply not contingent on whether the lender is in breach of the basic contract. This language is not contingent on whether a lender is in breach because otherwise, whenever the parties’ dispute about a debt evolves into a lawsuit, other judicial proceedings, or foreclosure, and the lender loses, it would automatically be liable for violating the TDCA by an action “without proper court proceedings” or “prohibited by law.” The majority, in essence, penalizes the lender’s access to the courts unless it wins the suit. This is a high price to pay for accessing the justice system, and it is a price at odds with the statute.
Perhaps the simplest explanation of the overall inconsistency between the majority’s holding and the economic loss rule was articulated in a Texas appellate court’s reasoning why a tenant’s claim for return of a $175 deposit withheld by a landlord could not be transformed into a DTPA action. See Holloway v. Dannenmaier, 581 S.W.2d 765, 767 (Tex.Civ.App.1979) (cited in Crawford, 917 S.W.2d at 14). The court posited that the landlord ignored the lease agreement, refused to return the deposit and, compounding the tenant’s difficulty, shielded itself with a plea of privilege to be sued two hundred miles away. The court asked:
Would this be a misrepresentation of the rights, remedies or obligations stated in the contract? No. Although tenant might believe that he could get a refund or a written explanation without going to court for same, he had no more guaranty than any other party to any contract that the same would not be breached. He still has the same rights spelled out in the contract. As in any breach of contract, he has the right to bring an *490 action to enforce them.[7]
Id. So it was here, only the McCaigs never had to file suit to enforce their rights against Wells Fargo under the Forbearance Agreement.
The TDCA should be interpreted consistently with Texas law that, in the closely related area of deceptive trade practices, has diligently discriminated between violations of the statute and mere breaches of contract. I respectfully dissent.

. Tex. Fin.Code §§ 392.001-392.404. All statutory citations are to the Texas Financial Code unless specified otherwise.

. The majority cite a TDCA provision that offers a defense for bona fide errors under certain circumstances. § 392.401. Neither party noted this defense, and research has not uncovered relevant cases. Unlike the majority, I will not speculate about the parameters of this provision.

. I concur in Parts I, III.A, IV.A and V. of the majority opinion.

. The Texas Supreme Court has carefully explained the reach and ambiguities inherent in the economic loss rule. See Sharyland Water Supply Corp. v. City of Alton, 354 S.W.3d 407, 418-19 (Tex.2011). The ambiguities are of little moment here, however, because Wells Fargo’s bad acts occurred in its erroneous attempt to exercise its remedies under the Forbearance Agreement. The McCaigs assert no recovery for economic loss pertaining to the breach of contract, which Wells Fargo fully cured, and their only sustainable claims were for mental anguish caused by the breach.

.The majority opinion relies on the "independent source” doctrine, which holds that an act can give rise to both tort and contract liability when it violates duties independently *488 arising under each body of law. See Formosa Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc., 960 S.W.2d 41, 47 (Tex.1998); Chapman Custom Homes, Inc. v. Dallas Plumbing Co., 445 S.W.3d 716, 718 (Tex.2014). This is true, but it ignores the fact that Wells Fargo's alleged wrongdoing here was only wrong because it violated the agreement.

. But see Baker v. Countrywide Home Loans, Inc., 2009 WL 1810336, at *7 (N.D.Tex.2009); Steele v. Green Tree Servicing, LLC, 2010 WL 3565415 (N.D.Tex.2010), at *6; Brush v. Wells Fargo Bank, N.A., 911 F.Supp.2d 445, 474 (S.D.Tex.2012). These cases hold that lenders’ errors in loan balance statements may give rise to TDCA violations, but none of them discusses nor squarely rejects the economic loss rule.

. The court noted that no fraud or continuing scheme had been alleged, nor are there such allegations here.