**LONE STAR FORD, INC., Appellant,**

v.

**Howard R. HILL, Jr., Appellee.**

No. C14–93–00816–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 28, 1994.

Rehearing Denied May 26, 1994.

Dale M. Tingleaf, Houston, for appellant.

John W. Havins, Jeffry P. O'Dea, John Gorman, Houston, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

This appeal is from a judgment after a jury verdict awarding damages for conversion and violation of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA). TEX.BUS. & COM.CODE ANN. §§ 17.-41–.63 (Vernon 1987 & Supp.1994). Appellee, Howard R. Hill, Jr. ("Hill") sued appellant, Lone Star Ford, Inc. ("Lone Star"), for damages after Lone Star sold him a used car it had already sold to someone else. We affirm as modified.

On appeal, Lone Star raises twelve points of error, most of which attack the legal sufficiency of the evidence supporting the jury's findings. In reviewing no evidence points, we consider only the evidence and inferences tending to favor the jury's findings and disregard all contrary evidence and inferences. *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex.1990). We must uphold the jury's findings if we find any evidence of probative force to support them.

*Id.* Thus, a legal insufficiency challenge fails if more than a scintilla of evidence supports the jury's findings. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 228 (Tex.1990). The jury is the sole judge of the credibility of the witnesses and the weight to be given to the testimony, and is entitled to resolve any conflicts or inconsistencies in the evidence. *Rego v. Brannon,* 682 S.W.2d 677, 680 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

Accordingly, we present the facts tending to support the jury's findings. Hill had sought for about a year to buy a used 1984 Volvo 280GLE with low mileage. In late January 1989, he answered Lone Star's newspaper ad featuring such a car. Lone Star's salesman, Maurice Pinkney ("Pinkney"), told him the car had been sold. Pinkney later called Hill back to say the sale of the Volvo had fallen through. Consequently, Hill and his fiancee (now his wife) met Pinkney at the dealership the next morning to look at the car. After a test drive, Hill negotiated with Pinkney to buy the car. They agreed on a price of $8,900, Pinkney prepared the paperwork, Hill put down $500 and traded in his 1982 Mercury Lynx for $500. Lone Star also agreed to replace the car's missing stereo system. Pinkney told Hill he could pick up the car that afternoon after the previous prospective buyer had picked up her deposit check.

Later that afternoon, Hill and his fiancee returned to the dealership to pick up the Volvo. Pinkney told them the other buyer had picked up her deposit check and they were free to take the car. Hill then transferred his possessions to the Volvo, left his Lynx as a trade-in and drove the Volvo home, with the understanding that Lone Star would install a new stereo system as soon as it received a suitable one in stock. Hill drove the car for several days before Lone Star notified him that the new stereo was in stock. He then took the Volvo to the dealership, was told the stereo installation would not be completed that afternoon, and was given a loaner car. When Hill went back to pick up the Volvo, he returned the loaner car. A sales manager then told him Lone Star sold the Volvo to someone else. Hill was devastated. His deposit was returned, and he left the dealership in the Lynx he had traded in.

Hill later learned Lone Star sold the Volvo to Dora Chavez ("Chavez"), the woman Pinkney claimed had picked up her deposit check. Chavez had also dealt with Pinkney about purchasing the Volvo and agreed to buy the car on January 26, 1989, two days before Hill did. Lone Star similarly agreed to install a new stereo system for Chavez, and she left the car with the dealership for that purpose. A dispute arose over the quality of the system to be installed, and Pinkney tried to discourage Chavez from taking the car. Despite this problem, Chavez never told Pinkney she wanted to cancel the deal or that she wanted her deposit back. Instead, she went to the dealership about the dispute and was infuriated to learn the car had been sold to someone else. She threatened to sue and demanded the car. Realizing the Volvo was in its garage, Lone Star removed Hill's belongings and gave the car to Chavez.

Hill sued Lone Star for breach of contract, negligence, gross negligence, bad faith, fraud, conversion and intentional and negligent infliction of emotional distress. After conducting discovery, Hill added his DTPA claim. He later abandoned breach of contract, bad faith, and negligent infliction of emotional distress claims. The trial court granted an instructed verdict in favor of Lone Star on Hill's claims of negligence, gross negligence, intentional infliction of emotional distress, and conversion of the car. The jury awarded Hill $500 for his mental anguish based on a knowing violation of the DTPA, and $5,000 additional damages. While the jury found Lone Star had defrauded Hill, it found no damages as a result of this fraud. The jury found Lone Star maliciously converted Hill's personal property, and awarded $90 in actual damages and $600 in exemplary damages. The jury also awarded Hill attorney's fees. The trial court apparently added all the damages together and entered judgment for $6,190, plus attorney's fees and interest.

■ In Lone Star's fourth, eleventh and twelfth points of error, it complains the trial court erred in calculating the final judgment.

It contends the court should not have included the $5,000 additional damages in calculating the judgment amount. Hill concedes on appeal that the trial court erred in entering judgment for $6,190, when the correct amount, according to the jury's answers and the statute, is $2,190. Section 17.50(b)(1) of the DTPA provides in relevant part as follows:

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of actual damages found by the trier of fact. In addition the court shall award two times that portion of the actual damages that does not exceed $1,000. If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000. . . .

TEX.BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon Supp.1994). According to the statute, Hill was allowed to recover $500 plus twice that amount for a total of $1,500. Then, the damages for conversion and the exemplary damages should be added to total $2,190. Since the actual damages awarded under the DTPA were less than $1,000, there was no statutory basis for the court to award additional damages. We sustain Lone Star's points of error four, eleven and twelve. Accordingly, we reform the judgment of the trial court to reflect an award of $2,190, plus interest and attorney's fees.

■ In its first point of error, Lone Star contends there is no evidence it engaged in any false, misleading or deceptive act or practice that was a producing cause of damages to Hill. It argues that at most, Hill would have a claim for breach of contract and relies on a line of cases holding that mere breach of contract, without more, does not constitute a false, misleading or deceptive act in violation of the DTPA. *See, e.g., Ashford Development, Inc. v. USLife Real Estate Services Corp.,* 661 S.W.2d 933, 935 (Tex. 1983); *Quitta v. Fossati,* 808 S.W.2d 636, 644 (Tex.App.—Corpus Christi 1991, writ denied) and cases cited therein.

■ We do not disagree with this general proposition, but find that in this case there was certainly some evidence of deceptive and misleading acts, in addition to any breach of contract claim, to support the jury's answer. Jury question one defined "false, misleading or deceptive act" in accordance with the statutory language as "failure to disclose information concerning goods or services which was known at the time of the transaction with the intention to induce another person into a transaction." *See* TEX.BUS. & COM. CODE ANN. § 17.46(b)(23) (Vernon Supp. 1994). Lone Star is liable for the torts of its agents acting within the course and scope of their employment. *Guilbeau v. Anderson,* 841 S.W.2d 517, 519 (Tex.App.—Houston [14th Dist.] 1992, no writ). Hill testified Pinkney told him Chavez had cancelled the deal, the Volvo was available for purchase, and Chavez had picked up her deposit check. Chavez denied she had cancelled the deal and she never picked up her deposit check. The evidence supports a finding that Lone Star concealed its prior sale to Chavez.

The evidence also shows Lone Star knew it sold the same car twice. Lone Star is bound by the knowledge of its agents acquired in the course and scope of their employment. *La Sara Grain Co. v. First Nat'l Bank,* 673 S.W.2d 558, 563 (Tex.1984). The same salesman, Pinkney, sold the Volvo to both Hill and Chavez, and both sales were approved by the sales manager. Lone Star's knowledge is also evidenced by the information contained in its records; Chavez's prior purchase was recorded in its Buyer's Order and Invoice, daily sales log, due bill, and worksheet. In addition, Pinkney testified he knew about Chavez's deposit on the Volvo, "[b]ut what [he] was really trying to do was to put pressure on [Hill] to buy the car."

There is evidence Pinkney's failure to disclose that the pending deal had not been cancelled induced Hill to buy the car. Pinkney told Hill he could take the car after Chavez picked up her deposit and "that he had been on the phone with her and that she would come up and pick up her check." When the Hills returned to the dealership later that day, Pinkney told them Chavez had picked up her check and they could take the Volvo. Mrs. Hill testified the "first thing" she asked Pinkney was "has the lady picked up her deposit check" because "I knew my

husband was excited about the car. I knew that we couldn't have the car until then and I wanted to make sure we did the right thing and there wasn't another deal pending." We find more than a scintilla of evidence to support the jury's finding that Lone Star violated the DTPA and overrule the first point of error.

In its second point of error, Lone Star contends there is no evidence to support the jury's finding of unconscionable conduct in answer to question two. We need not analyze the evidence under this point because even if we were to sustain it, it would not provide a basis for reversible error. TEX. R.APP.P. 81(b)(1). The damages awarded are supported by the jury's affirmative finding under question one, and any alternative ground of recovery under the DTPA is superfluous. *See* TEX.BUS. & COM.CODE ANN. § 17.50(a)(1), (3) (Vernon 1987). We overrule point two.

■ Points three and five concern the damages awarded for mental anguish. In point five, Lone Star contends there is no evidence of a knowing violation of the DTPA. Proof of a knowing violation of the DTPA permits recovery of mental anguish damages under the Act. *Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115, 117 (Tex.1984). Mental anguish damages may be recovered even in the absence of other economic or physical injury. *Boyles v. Kerr,* 855 S.W.2d 593, 598 (Tex.1993); *Dan Boone Mitsubishi, Inc. v. Ebrom,* 830 S.W.2d 334, 337 (Tex. App.—Houston [14th Dist.] 1992, writ denied). First, we find the evidence recited under point one supports the jury's finding of a knowing violation. *See Sumrall v. Navistar Fin. Corp.,* 818 S.W.2d 548, 557 (Tex. App.—Beaumont 1991, writ denied) (same evidence supporting knowledge element in failure to disclose supports knowing finding). Point of error five is overruled.

■ In point three, Lone Star contends no evidence supports the jury's finding of $500 in damages for mental anguish. "Part of the proof in a case includes the witnesses themselves, their demeanor, their voice modulation, and the gut feeling they project to the jurors." *Herbert v. Herbert,* 754 S.W.2d 141, 147 (Tex.1988). The evidence, to which a jury can relate, of what has taken place in a plaintiff's life as a result of the defendant's actions is just as important as emotional testimony in considering an award of mental anguish damages. *City of Ingleside v. Kneuper,* 768 S.W.2d 451, 460 (Tex.App.—Austin 1989, writ denied). To support the award of mental anguish damages, Hill cites his elation over purchasing the car followed by his devastation when he lost it. He searched for over a year for this particular model of Volvo because he liked its looks and, as 1984 was the last year it was made, considered it a collector's item. This car was in extremely good condition with very low mileage. Both Pinkney and Mrs. Hill described Hill as "ecstatic" because he found the car he wanted. When Hill drove the Volvo home, he "was just so proud of it," he "really want[ed] to show it off," and he "was so excited to have this car." He even had his wife take his picture with it.

When Hill returned to the dealership to pick up his car, Lone Star's manager abruptly told him the Volvo he loved had been sold to someone else, explaining, "[w]ell, you know how used car salesmen are." Hill was "completely flabbergasted and shocked." He testified "I mean you can't imagine after all the work I had done looking for this car to have someone jerk it out from under your feet from you like that." He suffered from disbelief, became extremely upset, lost sleep, and even cried. He felt humiliated and embarrassed because he had shown the car off to friends at college and work. Mrs. Hill testified Hill became depressed and upset after Lone Star took the car away from him. "He was very sour over this, sour over this, very bitter. He felt like he had been taken. He was humiliated. He was—his whole manner, the way he was, just changed."

The trial court instructed the jury that "mental anguish" means "a relatively high degree of mental pain and distress; it is more than mere disappointment, anger, resentment, or embarrassment. Although it may include all of these, it also includes mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, and/or public humiliation." *See Park-*

*way Co. v. Woodruff,* 857 S.W.2d 903, 914 (Tex.App.—Houston [1st Dist.] 1993, writ granted); *Dan Boone Mitsubishi, Inc.,* 830 S.W.2d at 336–37.

We conclude there is some evidence to support the jury's finding on mental anguish. Hill's shock, severe disappointment, disbelief, depression, sleeplessness, and bitterness reflect a relatively high degree of distress. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Zubiate,* 808 S.W.2d 590, 600–01 (Tex.App.—El Paso 1991, writ denied) (mental anguish damages upheld when plaintiffs were frightened, angry, scared, confused, hurt, nervous, frustrated by denial of insurance claim). He felt humiliated that he had been taken, and that he had to face the friends to whom he had shown off the car. The culmination of the effect this transaction had on Hill is shown in Mrs. Hill testimony that Hill himself, "the way he was," changed. *See, e.g., Guilbeau,* 841 S.W.2d at 520 (mental anguish damages upheld when foundation cracks had "very devastating effect" on family); *but see Parkway Co.,* 857 S.W.2d at 914–16 (testimony plaintiff was "hot," very disturbed, upset, very quiet, and lifestyle had changed after property flooded held legally insufficient to support mental anguish).

Translating mental anguish damages into dollars is necessarily an arbitrary process. In the absence of any objective guidelines, we should defer to the jury's discretion in determining mental anguish damages. *Haryanto v. Saeed,* 860 S.W.2d 913, 923 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (en banc). We find no error in the award of these damages and overrule Lone Star's third point of error.

■ Points of error six, seven and eight concern Hill's conversion claim. First, in point six, Lone Star argues that question number ten inquiring about conversion of Hill's personal property should not have been submitted because there were no pleadings to support its submission. Lone Star's only objection to question ten was that there was no evidence of conversion. Objections to the charge must be specific, clearly identify the

error and explain the complaint. TEX. R.CIV.P. 274; *Castleberry v. Branscum,* 721 S.W.2d 270, 277 (Tex.1986). On appeal, a party must make the same objection to the charge that was made below or error is waived. *Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 819 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). Lone Star's complaint as to lack of pleading in its motion for JNOV was not timely. *Mixon v. Nat. Union Fire Ins. Co.,* 806 S.W.2d 332, 334 (Tex.App.—Fort Worth 1991, writ denied). Without a specific objection to the charge on the ground there was no pleading, Lone Star has not preserved this point for our review.[1] We overrule point of error six.

■ In point of error seven, Lone Star complains there is no evidence to support the finding on conversion of Hill's personal property. The charge defined conversion as "the unauthorized and wrongful assumption and exercise of dominion and control over another person's personal property in denial of or inconsistent with the person's right of possession and use of the property." *See Bandy v. First State Bank,* 835 S.W.2d 609, 622 (Tex.1992).

At trial, the evidence tending to support the jury's finding on conversion showed Hill left some clothes, athletic equipment, shoes, a tape recorder, a flash light, and business receipts in the Volvo when he brought it in to have the new radio installed. After Lone Star sold the Volvo to Chavez, it returned Hill's trade-in, which no longer contained his belongings. Lone Star admitted one of its employees removed Hill's belongings from the Volvo and Chavez also corroborated this fact. Hill demanded return of his personal possessions, and Lone Star's manager told Hill he could find his things in a vending machine room. Hill found some of his belongings there, but they were "strewn all over the floor in there" and "just on the floor in disarray." He gathered them up and noticed several items were missing. Hill testified to the value of the missing items.

1. Lone Star also waived any error on admission of testimony about conversion by failing to assign a proper point of error. *San Jacinto River Auth.* *v. Duke,* 783 S.W.2d 209, 209–10 (Tex.1990) (per curiam).

We reject Lone Star's argument that it did not convert Hill's belongings because he voluntarily left them at the dealership when he dropped off the Volvo. Conversion may still occur even though possession of the property may originally be acquired by lawful means. *Reese v. Parker*, 742 S.W.2d 793, 797 (Tex. App.—Houston [14th Dist.] 1987, no writ). Conversion results even in the absence of wrongful intent. *Winkle Chevy-Olds-Pontiac, Inc. v. Condon*, 830 S.W.2d 740, 746 (Tex. App.—Corpus Christi 1992, writ dism'd). We conclude that there is more than a scintilla of evidence to support the jury's finding on conversion and overrule point seven.

■ In point of error eight, Lone Star complains there is no evidence to support the jury's finding of malice. The charge defined malice as "ill will, bad or evil motive, or such gross indifference or reckless disregard of the rights of others as to amount to a willful or wanton act." *Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 475 (Tex. App.—Houston [1st Dist.] 1985, no writ). Malice may be actual or implied. *Morey v. Page*, 802 S.W.2d 779, 787 (Tex.App.—Dallas 1990, no writ). The fact that Hill found his belongings "strewn all over the floor" in the vending machine room implies gross indifference or reckless disregard of Hill's rights. Finding more than a scintilla of evidence of malice, we overrule point eight.

Because the amount offered in settlement was more than the amount of actual damages awarded by the jury, Lone Star asserts Hill's recovery is limited to the amount of actual damages, and he is not entitled to any attorney's fees. Lone Star contends Hill is precluded by its settlement offer from recovering attorney's fees in point of error nine, and in point ten, Lone Star argues that Hill may only recover $500 in damages. As presented

here, these issues are questions of first impression.

Hill did not add his DTPA claim until 1992, shortly before trial was originally scheduled, after completion of discovery. At that time, he sent Lone Star's attorney the required DTPA notice letter.[2] Hill demanded $15,000 in damages and $8,000 in attorney's fees in his notice letter. In response, Lone Star made a timely offer of settlement, offering $2,000 in damages and $500 in attorney's fees.[3]

Section 17.505(d) of the DTPA provides in pertinent part as follows:

(d) A settlement offer made in compliance with Subsection (c) of this section, if rejected by the consumer, may be filed with the court together with an affidavit certifying its rejection. If the amount tendered in the settlement offer is the same as or more than, or if the court finds that amount to be substantially the same as, the actual damages found by the trier of fact, the consumer may not recover an amount in excess of the amount tendered in the settlement offer or the amount of actual damages found by the trier of fact, whichever is less.

TEX.BUS. & COM.CODE ANN. § 17.505(d) (Vernon Supp.1994). Lone Star filed its offer and affidavit certifying rejection with the court, and the trial court took judicial notice of them.

■ To invoke the limitation on damages for a consumer unreasonably refusing to settle, the DTPA requires an offer to reimburse for attorney's fees "reasonably incurred by the consumer in asserting his claim up to the date of the written notice." TEX.BUS. & COM. CODE ANN. § 17.505(c) (Vernon Supp.1994).

**2.** Section 17.505(a) provides in pertinent part:
As a prerequisite to filing a suit seeking damages ... against any person, a consumer shall give written notice to the person at least 60 days before filing the suit advising the person in reasonable detail of the consumer's specific complaint and the amount of actual damages and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant.
TEX.BUS. & COM.CODE ANN. § 17.505(a) (Vernon Supp.1994).

**3.** Section 17.505(c) provides in pertinent part:
Any person who receives the written notice provided by Subsection (a) of this section may, within 60 days after the receipt of the notice, tender to the consumer a written offer of settlement, including an agreement to reimburse the consumer for the attorneys' fees, if any, reasonably incurred by the consumer in asserting his claim up to the date of the written notice.
TEX.BUS. & COM.CODE ANN. § 17.505(c) (Vernon Supp.1994).

Settlement offers under the DTPA must conform to the statutory requirements. *Cail v. Service Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983). Hill contends that he added the DTPA claim only after he learned sufficient information during costly discovery, including Pinkney's videotaped deposition, to assert his claim in good faith. *See* TEX.BUS. & COM. CODE ANN. § 17.50(c) (Vernon 1987) (fees and costs awarded to defendant for groundless and bad faith DTPA claims). Thus, he claims the fees demanded were reasonably incurred in asserting his claim, and the $500 offer did not comply with the statute's requirement to offer to reimburse him for attorney's fees. Accordingly, he argues section 17.505(d) may not be invoked to limit his damages to $500.

Lone Star contends it was Hill's burden to establish the fees reasonably incurred in asserting his claim. We disagree. Section 17.505(d) is in the nature of an affirmative defense; thus it was Lone Star's burden to establish its offer to reimburse $500 in attorney's fees was reasonable. It offered no such proof. Lone Star's cross examination of Hill's expert witness on attorney's fees was brief and made no inquiry as to the reasonableness of *any* of Hill's attorney's fees, with the possible exception of asking whether Hill was charged for two attorneys' time at trial. Nor did Lone Star ask the court for a finding that the attorney's fees requested in Hill's demand letter were unreasonable or that $500 constituted a reasonable offer. Because section 17.505(d) is conditioned on compliance with the express terms of section 17.505(c), Lone Star's failure to establish it made a reasonable offer of reimbursement for attorney's fees allows Hill to recover up to three times his actual damages. *See Cail,* 660 S.W.2d at 815 (settlement offer insufficient to preserve penalty for consumer's unreasonable refusal to accept it when no offer was made to reimburse for attorney's fees).

While we recognize the legislature may not have contemplated a delay of over two years between the filing of suit and asserting a DTPA claim, we do not believe Hill should be penalized for thoroughly investigating his claim before asserting it. We believe there is more involved in "asserting a claim" than simply sending a demand letter, as Lone Star contends. In the absence of any evidence to the contrary, we have no reason to doubt that Hill and his attorneys believed in good faith that his cause of action was properly for breach of contract until they learned of Lone Star's knowing misrepresentations.

We hold Hill may recover his actual damages plus two times that amount, or $1500, on his DTPA claim. We overrule point of error ten.

■ Having found Lone Star failed to establish its settlement offer included an offer to reimburse Hill for his reasonable attorney's fees, section 17.505(d) does not apply to preclude trebling of damages *or* attorney's fees. Had Lone Star's offer been established as reasonable, however, we believe Hill should still be entitled to recover attorney's fees.

First, an examination of the predecessor to section 17.505(d) gives guidance in interpreting the legislative intent behind the act. In 1977, the legislature passed section 17.50A of the DTPA, which provided:

> In an action brought under Section 17.50 of this subchapter, *actual damages only and attorney's fees* reasonable in relation to the amount of work expended and court costs may be awarded where the Defendant:
>
> \* \* \* \* \* \*
>
> (2) proves that ... within 30 days after he was given written notice he tendered to the consumer (a) the cash value of the consideration received from the consumer or the cash value of the benefit promised, whichever is greater, and (b) the expenses, including attorney's fees, if any, reasonably incurred by the consumer in asserting his claim against the defendant....

Act approved May 23, 1977, 65th Leg., R.S., ch. 216, § 6, 1977 Tex.Gen.Laws 600, 604. (emphasis supplied). This provision was designed to create a defense to treble damages under the act. *Johnson v. Willis,* 596 S.W.2d 256, 263 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.). The original enactment specifically allowed a plaintiff to recover his actual damages *and attorney's fees.* In 1979, the legislature rewrote this section to remove the restriction on the offer to a particular

measure of damages and to permit a settlement *offer* without requiring a *cash* tender.[4] Act approved June 13, 1979, 66th Leg., R.S., ch. 603, § 5, 1979 Tex.Gen.Laws 1327, 1330. We do not believe the 1979 amendments intended to preclude recovery of attorney's fees when damages are substantially the same as the damages rejected in a settlement offer. *See* Michael Curry, *The 1979 Amendments to the Deceptive Trade Practices—Consumer Protection Act*, 32 BAYLOR L.REV. 51, 70 (1980) ("While the language of section 17.50A will permit a contrary construction, the provision should be construed to allow recovery of attorneys' fees and court costs when a settlement offer substantially approximates the ultimately determined actual damages.")

We believe section 17.505(d) imposes a means for avoidance of treble damages only. The rationale underlying our conclusion is based upon several considerations, keeping in mind that the DTPA must be liberally construed to protect consumers, to encourage them to seek redress, and to deter deceptive practices. *See* TEX.BUS. & COM.CODE ANN. § 17.44 (Vernon 1987); *Woods v. Littleton*, 554 S.W.2d 662, 669 (Tex.1977). First, we look to a plain reading of the statute. The statute does not state attorney's fees may not be recovered. Additionally, the entire DTPA must be construed to ascertain the legislative intent. *Big H Auto Auction, Inc. v. Saenz Motors*, 665 S.W.2d 756, 758 (Tex.1984). The DTPA distinguishes damages and attorney's fees by providing each as a separate remedy in sections 17.50(b)(1) and (d). Attorney's fees do not constitute actual damages under the DTPA as a matter of law. *Brown Foundation Repair and Consulting, Inc. v. Friendly Chevrolet Co.*, 715 S.W.2d 115, 119 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Thus, language limiting recovery of *damages* should have no bearing on recovery of *attorney's fees*.

Moreover, section 17.50(d) mandates an award of attorney's fees to a consumer who prevails on a DTPA claim. TEX.BUS. & COM. CODE ANN. § 17.50(d) (Vernon 1987); *Doer-*

*fler v. Espensen Co.*, 659 S.W.2d 929, 931 (Tex.App.—Corpus Christi 1983, no writ); *see also McKinley v. Drozd*, 685 S.W.2d 7, 9–10 (Tex.1985). Construing section 17.50(d) together with the provision on rejected settlement offers requires an award of attorney's fees to the prevailing consumer, even though that consumer is limited to the lesser of its actual damages or the offer. The consumer has still "prevailed," even though his damages have been reduced.

Section 17.505(d)'s silence on attorney's fees is significant in light of the legislature's enactment of other statutes precluding or limiting attorney's fees. For example, section 17.506 provides specific defenses to the "award of any damages or attorneys' fees." TEX.BUS. & COM.CODE ANN. § 17.506(a) (Vernon 1987). Both sections 17.505 and 17.506 were enacted as part of the 1979 amendments to the DTPA; section 17.506 specifically provides attorney's fees will not be awarded, but section 17.505 does not. When the legislature has carefully employed a term in one section of a statute, and has excluded it in another, it should not be implied where excluded. *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex.1980).

To support its argument that attorney's fees are barred, Lone Star relies on *Southwestern Bell Telephone Co. v. Vollmer*, 805 S.W.2d 825 (Tex.App.—Corpus Christi 1991, writ denied). This reliance is misplaced for two reasons. First, the language in *Vollmer* is dicta. The issue there was whether a tender of the amount due under a telephone company tariff limiting damages for errors and omissions in directory listings precludes or limits attorney's fees. The court found there was no evidence the full amount was tendered. *Id.* at 833–34. Also, even though not discussed in *Vollmer*, tender of the full amount claimed is an absolute defense separately covered in section 17.506(d), and that statute specifically precludes recovery of attorney's fees. *See* TEX.BUS. & COM.CODE ANN. § 17.506(d) (Vernon 1987).

---

4. The statute was later amended further, but, for our analysis, the current provision has no significant differences from the 1979 version. In 1987, section 17.50A was renumbered to section 17.-

505. Act approved May 25, 1987, 70th Leg., R.S., ch. 167, § 5.02(4), 1987 Tex.Gen.Laws 1338, 1361.

We conclude section 17.505(d) does not apply to prevent a prevailing plaintiff from recovering attorney's fees under the DTPA. Because the jury awarded $500 in actual damages, Hill is entitled to his reasonable and necessary attorney's fees.[5] We overrule point of error nine.

Hill raises three cross points complaining of the trial court's grant of directed verdict on its claims for intentional infliction of emotional distress, negligence and gross negligence. However, these points were brought in the alternative, to be considered only if we reversed any part of the court's judgment, except for reforming the award of damages to $2,190. As we have not sustained any of Lone Star's points of error, with the exception of those dealing with this reformation, we need not address Hill's cross points.

We find that it is appropriate in this case for the costs on appeal to be divided evenly, and we so order. *See* Tex.R.App.P. 82. Hill concedes that judgment should have been for $2,190, and yet he did not join or agree to Lone Star's motion to correct the judgment when this error was brought to the trial court's attention. Accordingly, Hill should bear responsibility for a portion of the costs of the appeal.

In conclusion, we modify the judgment below to order that Hill recover from Lone Star the sum of $2,190 as damages, instead of the $6,190 awarded by the trial court. In all other respects, the judgment of the trial court is affirmed.

---

5. Lone Star has not complained on appeal that the fees awarded to Hill are not reasonable or necessary. It also failed to argue attorney's fees should have been segregated so that Hill recovered only for the DTPA violation and not for claims for which he could not legally recover attorney's fees. Neither did it argue that Hill's attorney's fees should be limited to its demand of $8,000, despite the fact over one year had passed between the demand and trial. *See Minor v. Aland,* 775 S.W.2d 744, 747 (Tex.App.—Dallas 1989, writ denied) (award of $8,800 attorney's fees upheld because it was foreseeable additional attorney's fees would be incurred after demand of $5,600 two years before trial). Lone Star conceded at oral submission to this court that reduction of the amount awarded was not at issue, and its argument on attorney's fees was "all or nothing."