NUMBER 13-00-153-CV


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG




VALLEY NISSAN, INC., Appellant,

v.


JESSICA DAVILA, Appellee.




On appeal from the 107th District Court


of Cameron County, Texas.






 O P I N I O N



Before Chief Justice Valdez and Justices Rodriguez and Cantu (1)



 Opinion by Chief Justice Valdez


 

 Appellee, Jessica Davila ("Davila"), purchased a truck from appellant, Valley Nissan,
Inc. ("Valley Nissan"), in reliance on a false statement by a salesman that she had been
approved for financing. Davila subsequently sued Valley Nissan under various theories
including violation of the Texas Deceptive Trade Practices-Consumer Protection Act
("DTPA"). See Tex. Bus. & Com. Code Ann. § 17.46 (Vernon 2002). A jury found in favor
of Davila on all theories presented in the jury charge. The trial court entered judgment
based on Davila's election to recover under the DTPA and the jury's findings. 

 On appeal, Valley Nissan raises twenty issues attacking the legal and factual
sufficiency of the evidence supporting the jury's findings. For the following reasons, we
affirm the judgment of the trial court.

I. BACKGROUND

 On November 21, 1996, Davila and her common-law husband Juan G. Rodriguez
("Rodriguez") went to Valley Nissan in Harlingen, Texas to purchase a new pickup truck. 
They met with Ray Galvan ("Galvan"), a Valley Nissan salesman and longtime
acquaintance of Davila. Rodriguez and Davila selected a new truck with an $11,000 sticker
price. However, Rodriguez and Davila were unable to qualify for financing on the truck. 
They subsequently selected a used 1995 Nissan pickup truck with a much lower sticker
price. Galvan agreed to accept Rodriguez's truck as a trade-in and allowed $1,600.00
against the purchase price as down payment.

 Davila advised Galvan she would finance the purchase of the truck under her 

name because Rodriguez had poor credit. Later that same afternoon, Davila received, via
fax, financing information from Galvan. The following day, Galvan phoned Davila to inform
her that her financing had been approved and she should come to the dealership to
purchase the truck.

 Two days later, on November 23, 1996, Davila and Rodriguez went to Valley Nissan
to pick up the vehicle and to trade in Rodriguez's old Toyota pickup truck as down
payment. Davila finalized the sale by filling out other documentation. The retail contract
stated she was to begin making monthly payments on January 7, 1997. When she did not
receive the payment booklet in December, Davila and Rodriguez attempted to make
payments directly to Valley Nissan on several occasions. Each time, Valley Nissan's
employees declined the tendered payments and instructed them to await the arrival of the
payment booklet.

 In February 1997, Davila received legal title to the truck in her name. Two months
later, on April 18, 1997, Valley Nissan's used car manager Robert Trevino contacted Davila
and Rodriguez and asked them to come to the dealership to discuss a matter. While there,
Davila was informed her financing had not been approved after all and that she would have
to give an additional down payment, obtain a co-signor, or obtain other financing. After
Davila rejected those options, she was told that if she left the premises with the truck, they
would call the police and charge her with theft. Davila requested and received a signed
acknowledgment from Valley Nissan that they were retaining the pickup truck. Rodriguez's
request for return of his trade-in truck was denied because Valley Nissan had sold the truck
to a wholesaler from Mexico.

 Subsequently, Davila sued Valley Nissan for violations of the DTPA, common law
fraud, negligence, negligent misrepresentation, and breach of contract. The jury found in
favor of Davila on all theories presented to it. Davila elected to recover damages under the
DTPA. 

 On appeal, Valley Nissan challenges nearly all the findings in favor of Davila.
Because the judgment granted relief under the DTPA, we will examine only those jury
findings that give support to the awards actually reflected in the judgment rendered by the
trial court. Accordingly, we will not address issues pertaining only to the other theories of
recovery because they are not "necessary to final disposition of the appeal." (2) Tex. R. App.
P. 47.1.

II. ANALYSIS

A. Standard of Review

 When both legal and factual sufficiency issues are raised, we must first review the
legal sufficiency to determine if there is any evidence of probative value to support the
jury's findings. Glover v. Tex. Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981); In re
King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). Review of legal sufficiency of evidence
requires the reviewing court to consider only evidence and inferences that tend to support
the jury's findings and to disregard all evidence and inferences to the contrary. Sherman
v. First Nat'l Bank, 760 S.W.2d 240, 242 (Tex. 1988). When there is more than a scintilla
of evidence, the reviewing court may not overturn the jury's findings on legal sufficiency
grounds. Id.

 If the findings are supported by legally sufficient evidence, we must then review the
factual sufficiency of the evidence by weighing and considering the evidence both in
support of and contrary to the challenged findings. Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996). The jury's findings must be upheld unless they are so against the great
weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. 
Id. 

 Valley Nissan's various issues will be grouped into two categories: those pertaining
to the finding of liability and those pertaining to damages. We turn first to the issues
pertaining to liability under the DTPA.

B. Liability under the DTPA 

 In its argument on issues sixteen and seventeen, (3) Valley Nissan makes two
contentions regarding the finding of liability under the DTPA: (1) the DTPA does not apply
to Davila's claim because her claim is merely one for breach of contract; and (2) Davila
provided insufficient evidence that Valley Nissan violated the DTPA. We reject both
contentions. 

1. Ability to Recover under the DTPA

 First, Valley Nissan contends Davila's DTPA claim cannot be maintained because
the losses she complained of were purely economic losses related to the performance and
the subject matter of the contract, which were recoverable only under a breach of contract
claim. Valley Nissan relies on Ashford Dev., Inc. v. USLife Real Estate Servs. Corp., 661
S.W.2d 933, 935 (Tex. 1983). In that case, Ashford Development needed financing for a
planned construction project and paid USLife to obtain financing on Ashford Development's
terms. Id. When no satisfactory lender emerged, Ashford Development sued USLife to
recover the fee paid and also alleged violations of the DTPA. The court held an allegation
of a mere breach of contract, without more, does not constitute a "false, misleading or
deceptive act" in violation of the DTPA. Id. 

 The present case is distinguishable from Ashford Development. In that case, the
contract between the two parties was based on USLife searching for and obtaining
satisfactory financing. The only conduct complained of was USLife's inability to obtain
financing as required under the contract. 

 In the present case, however, the contract between Davila and Valley Nissan is not
a contract to obtain financing. The contract states it is a contract between the "Buyer:
Jessica Davila" and the "Creditor: Valley Nissan" for the purchase of a vehicle. Further,
in her fourth amended petition, Davila generally alleged Valley Nissan entered into a
contract with Davila to provide her with a 1995 Nissan Regular Cab pick-up truck. She did
not allege Valley Nissan contracted with her to obtain financing. 

 The present case is similar to Lone Star Ford, Inc. v. Hill, 879 S.W.2d 116 (Tex.
App.-Houston [14th Dist.] 1994, no writ). In Lone Star, the plaintiff sued Lone Star for
damages after Lone Star sold him a used car that had already been sold to someone else. 
Id. at 117. Lone Star's salesman induced the plaintiff into the sale by failing to disclose
that the previous buyer had not cancelled the purchase of the car. Id. The court in Lone
Star upheld the plaintiff's recovery for violation of the DTPA because the evidence showed
the defendant engaged in deceptive or misleading acts, in addition to any breach of
contract claim. Id. 

 Here, as in Lone Star, Davila's factual allegation giving rise to her DTPA claim is not
that Valley Nissan failed to perform under the purchase contract. Rather, she alleged
Valley Nissan induced Davila into the sale of the truck by falsely stating she was approved
for financing at the time she entered into the contract with Valley Nissan. As discussed in
more detail below, Davila provided evidence to support this allegation. Because she
alleged more than mere breach of contract, Ashford Development does not control here. 

2. Sufficiency of Evidence Supporting Liability 

 Second, Valley Nissan contends Davila provided no evidence supporting liability
under subsections 17.46(b)(5), (b)(12), and (b)(14) of the DTPA, the sections Davila
invoked in her petition. Sufficiency of the evidence must be examined in view of questions
and instructions submitted in the jury charge. Larson v. Cook Consultants, Inc., 690
S.W.2d 567, 568 (Tex. 1985). 

 Here, the jury answered yes to the following question:

 Question 5


Did Nissan engage in any false, misleading, or deceptive act or practice that
Davila relied onto [sic] her detriment and that were the producing cause of
damages to Davila?

***

"False, misleading, or deceptive acts or practices" means any of the
following: 1) representing that goods or services had characteristics which
they did not have, 2) representing that an agreement confers or involves
rights, remedies, obligations which it does not have or involve or 3)
misrepresenting the authority of a salesman, representative or agent to
negotiate the final terms of a consumer transaction.

This definition of "false, misleading, or deceptive acts or practices" corresponds with the
three subsections under which Davila brought her DTPA claim. Under this definition, the
jury needed to find evidence of only one of these three types of acts or practices. Our
review of the record reveals Davila presented evidence of all three.

a. Section 17.46(b)(5)

 Section 17.46(b)(5) of the Texas Business and Commerce Code states that false,
misleading, or deceptive acts include:

representing that goods or services have sponsorship, approval,
characteristics . . . which they do not have or that a person has a
sponsorship, approval, status, affiliation, or connection which he does not.


Tex. Bus. & Com. Code Ann. §17.46(b)(5) (Vernon 2002). 

 Davila provided evidence supporting a finding under this section. Davila testified
that Galvan called her on November 22, 1996, to tell her she was approved for financing
and to come in to purchase the truck. However, Catarino Alfaro, the finance manager at
Valley Nissan testified that, on that date, Davila had not been approved for financing. 
Further, the Credit Lender Reports from Primus Automotive Financial Services, which were
received into evidence, establish that on November 21, 1996, Davila had not been
approved for financing. A memo from Primus Automotive Financial Services to Valley
Nissan dated November 29, 1996, which also was received into evidence, states "customer
does not qualify." Gregg Geil, the credit supervisor for Primus Automotive Financial
Services, testified Primus never approved financing for Davila for the 1995 Nissan truck
in November. 

b. Section 17.46(b)(12)

 Section 17.46(b)(12) states a false, misleading, or deceptive act or practice
includes:

representing that an agreement confers or involves rights, remedies, or
obligations which it does not have or involve, or which are prohibited by law.


Id. §17.46(b)(12). 

 Davila also provided evidentiary support for a finding under this section. Plaintiff's
exhibit one, the contract on the sale of the car, states payments are to begin on January
7, 1997. Davila testified when she did not receive her coupon booklet in December she
called the sales manager at Valley Nissan, who told her she would be receiving it soon. 
She further testified she called Valley Nissan again in February, and she went to Valley
Nissan several times in order to make payments. Mike Galvan, an employee of Valley
Nissan, told Davila that Valley Nissan did not want to be responsible for the money, and
she should just wait for the booklet. 

c. Section 17.46(b)(14)

 Third, Valley Nissan claims Davila presented no evidence to support a jury finding
that Valley Nissan violated section 17.46(b)(14) of the DTPA. Section 17.46(b)(14) states
false, misleading, or deceptive acts or practices include:

misrepresenting the authority of a salesman, representative or agent to
negotiate the final terms of a consumer transaction.

Id. §17.46(b)(14). 

 Davila provided evidence in support of a finding under this subsection as well. 
Davila testified, at the time she signed the agreements, no one explained the terms of the
agreement to her. She testified Galvan told her she was approved for financing. Galvan
testified that as a sales representative, he does not structure any part of the financing for
the transaction. He also testified the general manager is the one who decides who gets
approved for financing. However, Galvan called Davila and told her she had been
approved and to come in and sign a contract. This is evidence that Valley Nissan depicted
Galvan as having the authority to approve credit applications and rely on such statements
in order to negotiate the final terms of the contract. 

 We conclude the evidence provided more than a scintilla of evidence supporting a
finding that Valley Nissan violated the DTPA. See Sherman, 760 S.W.2d at 242. The
jury's finding was not against the great weight and preponderance of the evidence. See
Ortiz, 917 S.W.2d at 772.

C. Damages

 Valley Nissan makes various challenges to the sufficiency of the evidence
supporting the jury's findings on damages. Not all of Valley Nissan's damage-related
contentions pertain to the damages the trial court awarded in the judgment. To understand
which findings were incorporated in the trial court's final award, we summarize several of
the jury's findings and the trial court's award.

 Among its findings, the jury concluded: (1) $15,314.46 would compensate Davila for
her damages resulting from the breach of contract or negligence; (2) $1,000.00 would
compensate her for her damages resulting from the negligent misrepresentation; (3)
$2,500.00 would compensate her for her pain and mental anguish; (4) $7,500.00 would
compensate her for her loss of use of the truck; and (5) reasonable fees for her attorneys
would be (a) $15,000.00 for the trial, (b) $10,000.00 for an appeal to the court of appeals,
and (c) $7,000.00 for an appeal to the Texas Supreme Court.

 In its judgment, the trial court noted Davila elected to recover damages under the
DTPA and awarded:

 (1) $78,946.38 for actual damages,

 (2) $23,683.91 for prejudgment interest, and 

 (3) $32,000.00 for attorney's fees.

Although the trial court did not explain how it reached the calculation of the actual
damages, examination of the jury's findings shows that the amount was based on the
following calculation:

 $15,315.46 damages for breach of contract or negligence

 1,000.00 damages for negligent misrepresentation

 2,500.00 damages for pain and mental anguish

 + 7,500.00 damages for loss of use of the truck

 $26,315.46

 x 3.00 (4)

 $78,946.38 

 We note Valley Nissan did not challenge the trial court's calculation of damages. 
Thus, we do not address the propriety of the court's calculations here. Rather, we use the
calculations to determine which of the jury's findings were used by the trial court and need
to be addressed on appeal. 

 Valley Nissan raises several issues pertaining to the findings leading to the
judgment: (1) the jury was not asked to award Davila economic damages under the DTPA;
and (2) the jury's findings on other damages were not supported by the evidence. We turn
first to the issue of economic damages.

1. Economic Damages under the DTPA

 Valley Nissan contends Davila cannot be awarded damages under the DTPA
because the jury was not asked to award economic damages arising out of the DTPA
violation. In the alternative, Valley Nissan argues the damages Davila sought were solely
contract damages and not economic damages. We disagree on both counts.

 A consumer who prevails in a claim brought under the DTPA may recover economic
damages. Tex. Bus. & Com. Code Ann. § 17.50(b)(1) (Vernon 2002). We note that it was
Davila's "burden to obtain affirmative answers to jury questions as to the necessary
elements" of her cause of action. Ramos v. Frito-Lay, Inc., 784 S.W.2d 667, 668 (Tex. 
1990). Additionally, if an entire theory were omitted from the charge it would be waived;
and the defendant would have no duty to object. Tex. R. Civ. P. 279; see Strauss v.
LaMark, 366 S.W.2d 555, 557 (Tex. 1963). Where, however, an issue is omitted that
constitutes only a part of a ground of recovery, the omitted issue is deemed found in
support of the judgment if no objection or specific findings are made and the presumed
finding is supported by some evidence. Tex. R. Civ. P. 279; see Strauss, 366 S.W.2d at
557. 

 Valley Nissan is correct that the jury was not given a specific question asking them
to calculate economic damages under the DTPA. However, the jury answered yes to the
question asking whether Valley Nissan had engaged in false, misleading, or deceptive acts
or practices. Although the jury was not explicitly asked about economic damages arising
from the violation, the jury was asked the following question, which referred to the jury's
findings on the DTPA violation and fraud: 

 Question 9


 What sum of money, if any, in addition to actual damages, should be
awarded to Davila because any of such conduct was committed
knowingly?


The jury answered $25,000. 


 Implicit in that finding is an acknowledgment that Davila suffered actual damages. 
As such, the issue of damages necessary to establish Davila's DTPA claim was raised in
the questions submitted to the jury. We further note that Valley Nissan did not object, nor
did it request specific findings by the trial court. As such, if the omitted element of actual
damages is supported by some evidence, we must deem it found against Valley Nissan
under rule 279. See Ramos, 784 S.W.2d at 668; Payne v. Snyder, 661 S.W.2d 134, 142
(Tex. App.-Amarillo 1983, writ ref'd n.r.e.). 

 The evidence presented at trial supports the presumed finding that Davila suffered
economic damages as a result of the violation. She testified that in reliance on the
statement, she traded another vehicle and purchased the Nissan truck. She then was
forced to return the truck. Valley Nissan did not return her trade-in. The jury also heard
testimony about the replacement value of the Nissan truck and loss of use of the truck. 

 Valley Nissan contends Davila never sought economic damages in her pleadings. 
It concedes Davila sought loss of the fair market value of her trade-in; loss of time, energy,
and out-of-pocket expenses; and mental anguish. However, it contends these are contract
damages.

 The term "economic damages" is defined by the DTPA as "compensatory damages
for pecuniary loss, including costs of repair and replacement." Tex. Bus. & Com. Code
Ann. § 17.45(11) (Vernon 2002). Whether the damages Davila sought can be categorized
as contract damages is not relevant here. With the exception of her claim for damages
based on loss of time and energy and mental anguish, the damages sought fall squarely
within the DTPA's definition of "economic damages." 

 Thus, given the questions posed to the jury and the evidence presented at trial, we
conclude the issue of economic damages was found in such a manner as to support the
judgment. We now turn to Valley Nissan's challenges to the jury's damage findings.

2. The Jury's Damage Findings We limit our review to Valley Nissan's issues pertaining to those jury findings on
which the trial court based its judgment. That is, we will consider the sufficiency of the
evidence pertaining to the jury's findings on the amount of damages Davila should receive
for: (1) breach of contract or negligence, (2) negligent misrepresentation, (3) mental
anguish, (4) loss of use of the car, and (5) attorney's fees.

 Section 17.50(b)(1) of the DTPA provides: (b) In a suit filed under this section, each consumer who prevails may obtain:

 (1) the amount of economic damages by the trier of fact. If the trier of fact
finds the conduct of the defendant was committed knowingly, the consumer
may also recover damages for mental anguish, as found by the trier of fact,
and the trier of fact may award no more than three times the amount of
economic damages; or if the trier of fact finds the conduct was committed
intentionally, the consumer may recover damages for mental anguish, as
found by the trier of fact, and the trier of fact may award not more than three
times the amount of damages for mental anguish and economic damages.


Id. §17.50(b)(1). Actual or economic damages are those recoverable at common law. 
Farrell v. Hunt, 714 S.W.2d 298, 300 (Tex. 1986). At common law, actual damages can
be either direct or consequential. Henry S. Miller Co. v. Bynum, 836 S.W.2d 160, 163
(Tex. 1992) (Phillips, C.J., concurring). Direct damages compensate for the loss, damage,
or injury that is conclusively presumed to have been foreseen or contemplated by the party
as a consequence of his breach of contract or wrongful act. Arthur Anderson & Co. v.
Perry Equip. Corp., 945 S.W.2d 812, 816 (Tex. 1997). Consequential damages, on the
other hand, are those damages which result naturally, but not necessarily, from the acts
contemplated. Haynes & Boone v. Bowser Bouldin, Ltd., 896 S.W.2d 179, 182 (Tex.
1995).

a. Damages for Breach of Contract or Negligence

 In issue one, Valley Nissan contends there was no evidence or factually insufficient
evidence to support the damage award of $15,315.46 for breach of contract and
negligence. When the damages issue is submitted to the jury in broad-form, as it was in
the instant case, it is difficult to ascertain with certainty what amount of the award is
attributable to each element considered. City of Port Isabel v. Shiba, 976 S.W.2d 856, 858
(Tex. App.-Corpus Christi 1998, writ denied); Greater Houston Transp. Co. v. Zrubeck, 850
S.W.2d 579, 589 (Tex. App.-Corpus Christi 1993, writ denied). If one element is
supported by the evidence, the damages award must be affirmed. City of Port Isabel, 976
S.W.2d at 859.

 The proper measure of recovery for a breach of contract claim is the loss or damage
actually sustained. Stewart v. Basey, 245 S.W.2d 484, 486 (Tex. 1952). The proper
measure of recovery has also been stated as the amount that the injured party would have
to expend to make himself whole. Mozer v. Goolsbee, 293 S.W.2d 91, 98 (Tex.
App.-Waco 1956, writ ref'd n.r.e.). 

 In the present case, Davila contracted for the purchase of a pick-up truck. The
particular truck she contracted to purchase was two years old at the time of purchase. 
Evidence introduced at trial showed that $15,315.46 was the deferred purchase price for
the truck. This amount was the exact amount awarded by the jury in response to question
4, which asked, "What sum of money, if any, if paid now in cash, would fairly and
reasonably compensate Jessica Davila, for her damages, if any, that resulted from
Nissan's breach of contract or negligence."

 After reviewing the evidence in its entirety, we conclude that the jury's determination
that Davila suffered compensable loss does not go against the great weight and
preponderance of the evidence. We further recognize that had the jury awarded this same
amount under a theory of negligence, the measure of damages could be the same. See
Nelson v. Krusen, 678 S.W.2d 918, 924-25 (Tex. 1984) (basic rule of tort compensation
is that plaintiff is to be put in position he would have been in absent defendant's
negligence).

 Appellant's first issue is overruled. 

b. Damages for Negligent Misrepresentation

 In issues two through four, Valley Nissan challenges the award of damages given
for negligent misrepresentation. The applicable jury questions concerning negligent
misrepresentation read as follows:

 Question 11

 Did Nissan make negligent misrepresentations on which Davila justifiably
relied?

 Negligent Misrepresentation occurs when - 

 a) a party makes a representation in the course of his business
or in a transaction in which he has a pecuniary interest,


 
 the representation supplies false information for the guidance
of others in their business, and 
 the party making the representation did not exercise
reasonable care or competence in obtaining or communicating
the information.
 


 Answer "YES" or "NO"

 Question 12

 What sum of money, if any, if paid now in cash, would fairly and reasonable
compensate Jessica Davila, for her damages resulting from Nissan's
negligent misrepresentation?

 Answer in dollars and cents for damages, if any.

 Valley Nissan specifically argues that Davila failed to offer any proof of economic
injury independent of contract damages and as such the damages represent double
recovery. Valley Nissan further contends that there was no evidence presented at trial to
substantiate a question concerning negligent misrepresentation nor was there evidence
supporting the award in the amount of $1,000.00. 

 In Federal Land Bank Ass'n v. Sloane, 825 S.W.2d 439, 442-43 (Tex. 1991), the
Texas Supreme Court adopted the independent injury requirement of section 552B of the
Second Restatement of Torts. See Restatement (Second) of Torts § 552B (1977). The
requirement places a burden on the party bringing the claim to establish an injury
independent of the loss of the benefit of the contract. Id. "Repudiating the independent
injury requirement for negligent misrepresentation claims would potentially convert every
contract interpretation dispute into a negligent misrepresentation claim." D.S.A., Inc. v.
Hillsboro Indep. Sch. Dist., 973 S.W.2d 662, 664 (Tex. 1998).

 Evidence presented at trial shows Davila met her burden of proving independent
injury. Davila delivered title and possession of a trade-in vehicle to Valley Nissan. This
delivery was made pursuant to Valley Nissan's representations that they would provide
Davila with the new truck and financing for the truck. Testimony presented at trial showed
Galvan valued the trade-in at $1,600.00. Davila's loss of this amount was an injury
independent of the contract damages. From this evidence we hold that Davila met her
burden of proving the independent injury required under section 552B of the Restatement. 

 With respect to Valley Nissan's challenge to the amount of the award, we again
consider the evidence of the trade-in value of the vehicle. Because the jury heard
evidence that Galvan valued the vehicle at $1,600, we hold that the jury could have found
that Davila suffered at least $1,000 in pecuniary damages in reliance upon Valley Nissan's
false misrepresentations. Issues two through four are overruled. 

c. Knowingly

 Valley Nissan argues in issues sixteen and seventeen that the evidence is
insufficient to support the jury's finding that Valley Nissan acted knowingly, and the court
erred in submitting the question of "knowingly" to the jury. A finding that the defendant
acted knowingly is a prerequisite to an award for mental anguish under the DTPA. Tex.
Bus. & Com. Code Ann. § 17.50(b)(1) (Vernon 2002). 

 The applicable question, which referred to previous questions concerning Valley
Nissan's liability for fraud and under the DTPA, read as follows:

 Question 8


 Did Nissan engage in any of the conduct described in Question 5 or 6
knowingly?


 "Knowingly" means an actual awareness at the time of conduct of the falsity,
deception, or unfairness of the conduct in question or actual awareness of
the conduct constituting a failure to comply with a warranty. Actual
awareness may be inferred where objective manifestations indicate that a
person acted with actual awareness. 

 

 In answering this question, consider [whether] the conduct that you have
found was a producing cause of damages, if any, to Davila.


 Answer "yes" or "no".


 At trial, testimony and evidence presented showed that Valley Nissan affirmatively
represented to Davila it had obtained financing for the purchase. Additionally, testimony
from Valley Nissan employees revealed the dealership, in the regular course of business,
routinely delivered possession of the vehicles to customers without confirming whether
financing had been approved. Further, Valley Nissan caused Davila to justifiably assume
that the representation was true when it placed record title to the vehicle in her name. The
record discloses sufficient evidence of objective manifestations from which the jury could
reasonably infer actual awareness that the representations were knowingly made by Valley
Nissan. 

 We hold that the evidence presented at trial demonstrating Valley Nissan's actions
provides support for the jury's finding that Valley Nissan acted "knowingly." We conclude
there was more than a scintilla of evidence for the jury to decide that Davila suffered
compensable damages from Valley Nissan's actions that were conducted knowingly. 
See Sherman, 760 S.W.2d at 242. In addition, after reviewing the evidence in its entirety,
we conclude that the jury's determination that Davila suffered compensable loss does not
go against the great weight and preponderance of the evidence. See Ortiz, 917 S.W.2d
at 772.

 We therefore overrule issues sixteen and seventeen.

d. Damages for Mental Anguish

 In issues seven and eight, Valley Nissan argues that the trial court erred in
submitting question 13 to the jury because there was insufficient evidence presented at trial
concerning mental anguish. Valley Nissan further argues that there was insufficient
evidence at trial to support the jury's award of $2,500.00 for mental anguish.

The applicable question states:

 Question 13

 What sum of money would have fairly and reasonably compensate[d] Davila
for- 


 Pain and mental anguish.


 "Pain and mental anguish" means the conscious physical pain
and emotional pain, torment, and suffering experienced by
Davila as a result of the occurrence in question.

 Do not reduce the amount, if any, in your answer because of the negligence,
if any, of Davila.

 Answer in dollars an cents for damages, if any.

 To survive a legal sufficiency challenge, a plaintiff must present direct evidence of
the nature, duration, and severity of his mental anguish, which establishes a substantial
disruption in his daily routine. Latham v. Castillo, 972 S.W.2d 66, 69 (Tex. 1998); Parkway
Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995). If there is no direct evidence, we must
apply traditional no evidence standards to determine whether the record reveals any
evidence of a high degree of mental pain and distress that is more than mere worry,
anxiety, vexation, embarrassment, or anger, to support an award of damages. Latham,
972 S.W.2d at 70; Parkway Co., 901 S.W.2d at 444. Mental anguish also includes mental
sensation of pain resulting from such painful emotions as grief, severe disappointment,
indignation, wounded pride, shame, despair, and public humiliation. Parkway Co., 901
S.W.2d at 444.

 Davila testified, "They humiliated me in front of their employees and threatened to
call the cops if we left with the truck and kind of rushed us to hurry up and get our stuff out
and watched us do it. . . . They used vulgar language towards Mr. Rodriguez and I."
Further, Davila testified they had no way to get home, and had to call someone to come
them up. 

 We hold that the evidence presented at trial which showed the public humiliation of
having one's truck repossessed provides some evidence to support the jury's finding on
mental anguish. See id. In reviewing only the evidence and inferences that tend to
support the jury's findings, we conclude that there was more than a scintilla of evidence for
the jury to decide that Davila suffered compensable mental anguish. See Sherman, 760
S.W.2d at 242. In addition, after reviewing the evidence in its entirety, we conclude that
the jury's determination that Davila suffered compensable mental anguish does not go
against the great weight and preponderance of the evidence. See Ortiz, 917 S.W.2d at
772.

 Appellant's seventh issue is overruled. 

 Next, we must determine whether the evidence is both legally and factually sufficient
to support the amount awarded for mental anguish. We give discretion to the jury in setting
the amount awarded because it is best suited to determine whether and to what extent the
defendant's conduct caused compensable mental anguish. GAB Bus. Servs., Inc. v.
Moore, 829 S.W.2d 345, 350 (Tex. App.-Texarkana 1992, no writ). In addition to the
evidence of compensable mental anguish, there must also be some evidence to justify the
amount awarded. Saenz v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex.
1996). Translating mental anguish into a dollar amount is a difficult task. Thus, juries must
be given a measure of discretion in finding damages; however, that discretion is not
unlimited. Id. Juries must find an amount that would reasonably compensate for the loss. 
Id. Although reasonable compensation is an elusive concept, finders of fact are charged
with calculating such a sum. Id.

 In reviewing the damages awarded for mental anguish, we require only that the
amount awarded compensate the aggrieved party in a fair and reasonable way. Id. 
Having thoroughly reviewed the facts upon which the jury based its award, we conclude
that on these facts an award of $2,500.00 is not unreasonable. Accordingly, we overrule
Valley Nissan's eighth issue. 

e. Loss of Use of the Vehicle

 In issues five and six, Valley Nissan claims there was no evidence or insufficient
evidence to support a jury award for loss of use of the vehicle, and the court erred in
submitting the question of loss of use to the jury. 

 As noted above, in its definition of "economic damages," the DTPA allows
compensatory damages for pecuniary loss, including costs and repair and replacement.
Tex. Bus. & Com. Code Ann. §17.45(11) (Vernon 2002). After reviewing the record, there
is testimony by both Davila and Rodriguez, that Davila did in fact use the truck. Both
Davila and Rodriguez testified that she used the truck for trips to the grocery store, to the
movies, and to the mall. The record shows Davila and Rodriguez purchased another truck
soon after Valley Nissan repossessed the truck, due to Rodriguez's livelihood as a delivery
truck driver. 

 We hold that the evidence presented at trial demonstrating Davila's use of the truck
provides some evidence to support the jury's finding on loss of use. In reviewing only the
evidence and inferences that tend to support the jury's findings, we conclude that there
was more than a scintilla of evidence for the jury to decide that Davila suffered
compensable damages for loss of use of his vehicle. See Sherman, 760 S.W.2d at 242. 
In addition, after reviewing the evidence in its entirety, we conclude that the jury's
determination that Davila suffered compensable loss of use damages does not go against
the great weight and preponderance of the evidence. See Ortiz, 917 S.W.2d at 772.

 Accordingly, issues five and six are overruled. 

f. Attorney's Fees

 In its nineteenth issue, Valley Nissan contends the trial court erred in submitting the
question regarding attorney's fees to the jury because Davila did not follow the
prerequisites to recover attorney's fees for a contract action pursuant to section 38.002 of
the Texas Civil Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann.
§ 38.002 (Vernon 1997). We need not address this issue because Davila elected to
recover under the DTPA, and the DTPA allows recovery for attorney's fees. Tex. Bus. &
Com. Code Ann. § 17.50(d) (Vernon 2002). Accordingly, issue nineteen is overruled. 

 In its twentieth issue, Valley Nissan asserts the evidence was legally and factually
insufficient to support the award of attorney's fees because Davila did not present any
evidence of a contractual agreement between herself and the attorneys who represented
her at trial and the reasonableness of the fees. We disagree. 

 At trial, Mr. Ron Armstrong testified that he was the lead attorney on the case and
had retained Mr. Cisneros and Mr. Mattingly to try the case. From this testimony the jury
could have properly inferred that a contract for legal services existed between Davila and
Mr. Armstrong, Mr. Cisneros, and Mr. Mattingly. 

 Further, section 17.50(d) mandates that, each consumer who prevails shall be
awarded court costs and reasonable and necessary attorney's fees. Id. §17.50(d). Thus,
the only question for the jury was the reasonable value of the attorney's fees and not
whether the attorney's fees should be awarded. Id. 

 An award of attorney's fees must be reasonable. David McDavid Pontiac, Inc. v.
Nix, 681 S.W.2d 831, 838 (Tex. App.-Dallas 1984, writ ref'd n.r.e.). The reasonableness
of attorney's fees is a fact question and must be supported by competent evidence, except
where the reasonableness may be presumed. Smith v. Smith, 757 S.W.2d 422, 424 (Tex.
App.-Dallas 1988, writ denied). An attorney's testimony concerning the time spent and the
attorney's hourly charge is considered reasonably sufficient evidence under the DTPA to
support an attorney's fee award. Id. at 426-27; David McDavid Pontiac, 681 S.W.2d at
838.

 In this case, Davila's lead attorney testified regarding the amount and
reasonableness of their fees. This testimony included time spent on the case, the hourly
rate, and costs to appeal the case to the court of appeals and the Supreme Court of Texas. 
Additionally, Valley Nissan's attorney testified he spent an almost equivalent amount of
time on the case, had the same hourly rate as Davila's attorneys, and stated similar figures
to appeal the case. Based on this testimony, the jury awarded attorney's fees of
$32,000.00. After reviewing the record in this case, we conclude the evidence supplies a
basis for the jury's finding of attorney's fees and that the jury's award was not
unreasonable. David McDavid Pontiac, 681 S.W.2d at 838. 

 We overrule Valley Nissan's final issue.

III. CONCLUSION

 Accordingly, this Court AFFIRMS the judgment of the trial court. 

 



 

 Rogelio Valdez,

 Chief Justice


 

Opinion delivered and filed

this 4th day of September, 2003.

 











1. Justice Cantu did not participate in this decision. His assignment to this Court
expired on August 31, 2003.
2. We do not address Valley Nissan's issues nine through fifteen and eighteen. 
These issues address the jury's findings on fraud, gross negligence, malice, a $25,000.00
award based on a finding of knowing conduct, and exemplary damages. Because Davila
elected to recover under the DTPA, none of these findings were relied on in the trial court's
final judgment.
3. A portion of the argument on these two issues is devoted to the jury's finding on
fraud. For the reasons stated above, we do not address this portion of Valley Nissan's
argument.
4. The court's multiplication of the total damages times three is based on section
17.50(b)(1) of the DTPA, which allows a consumer to recover up to three times the amount
of economic damages if the trier of fact finds the defendant acted knowingly or three times
the sum of the economic damages and mental anguish if the trier of fact finds the
defendant acted intentionally. Tex. Bus. & Com. Code Ann. § 17.50(b)(1) (Vernon 2002).